## Case No. 7,632.

KEANE et al. v. The GLOUCESTER.

[Bee, 399; 2 Dall. 36.]

Admiralty Court, Pennsylvania. 1782.[1]

PRIZE—PRIVATEER—SECOND LIBEL—LIST OF CREW—PAYMENT OVER OF FUNDS BY MARSHAL—PUT ON SHORE—ARTICLES OF AGREEMENT.

[1. A libel lies in admiralty by the members of a privateer's crew for their respective proportions of the prize.]

[2. The fact that a libel has been filed in a prize case by the captain and a decree of condemnation entered, and the prize sold, and distribution ordered according to the list of the crew, does not prevent the court from taking cognizance of a second libel by members of the crew who claim that they have been improperly omitted from the list. The court will consider the second libel as a supplemental proceeding.]

[Cited in Robinson v. Hook, Case No. 11,956.]

[3. The marshal, having the money in his hands derived from the sale of a condemned prize adjudged to the crew of the captor, is not exonerated from liability by paying out the money in accordance with the list of the crew furnished by the captain. He ought, before making such payments, to obtain the order of the court.]

[4. The libellants under articles of agreement shipped on board a privateer at Philadelphia, and proceeded down the river to Chester, where, without any objection to their skill or ability, they were put ashore, without their own consent, by the captain, who then destroyed the old articles, and caused new ones to be signed by those on board. Held, that the libellants are properly members of the crew, and entitled to their proportionate share of the prizes.]

[Cited in brief in The Brutus, Case No. 2,060.]

This was an appeal from the admiralty of Pennsylvania [Case No. 8,970], and after

[1] [Affirming Case No. 8,970.]

argument, Paca and Griffin, the presiding commissioners, delivered the following sentence.

BY THE COURT [HOPKINSON, J.]. Two objections are made to the decree below. The first objection is, that a libel does not lie by the crew of a privateer, for their respective proportions of a prize. The second objection is, that the libellants, in this case, are not part of the privateer's crew, nor captors, entitled to a proportion of the prize stated in their libel.

With regard to the first objection, we are of opinion, that a libel does lie, and that it is the proper and regular mode of redress: for, the commission of a privateer, according to the form established by congress, extends not only to the captain, but also to the ship and crew; they are captors, as well as the captain, and their rights to the thing captured, is equally founded on the commission. The ship is figuratively considered as an agent, and represents the owners. Articles of agreement generally direct the distribution; but if no articles are executed, the admiralty courts will make distribution, in proportion to the number, interest and merits of the captors. But, it is said, "the admiralty court, in this case, had exercised all its jurisdiction and power; that a libel was filed by the captain, and a decree passed for condemnation; that the prize has been sold, and the money lodged in the hands of the marshal; that the marshal must make distribution according to the list of the crew, which the captain shall deliver; and if the captain makes a false list, the party injured has no other remedy than by an action at law." The original libel, we find, was filed by the captain, in behalf of himself and crew, and the decree adjudges the prize to the captors. The marshal has sold the prize, and the money lies in his hands; on application, he refuses to pay the libellants; and the question is, what is the mode of redress?

We are of opinion that the libellants had a double remedy: They had an action at law, for money had and received to their use; and they were entitled to a supplemental libel, upon which a decree and order might have been obtained, to compel the marshal to pay the money. Such a libel is nothing more than a form of proceeding, to carry into execution the original decree; and if the admiralty courts are competent to give judgment, they must be competent to carry it into execution. We are also of opinion, that if a marshal makes distribution, without the orders of the admiralty court, he does it at his peril. The list or return of the crew by the captain, is no justification for his payments. He is the officer to carry the decree of the court into execution, and he must take care that his payments are made according to such decrees; for, on misapplication of the payment, a libel will

lie to make him responsible. If he would therefore act safely, he ought, before he makes his payments, to obtain the order and direction of the court; and the admiralty courts ought not to make an order, without previous measures to guard against fraud and imposition, by providing for latent claims.

But on the second ground, it is said, the decree below ought to be reversed; which is, that the libellants are not part of the privateer's crew, nor captors, entitled to the prize stated in their libel. It is proved, and admitted on all hands, that the libellants were shipped on board the privateer, at Philadelphia; that they were shipped under the articles of agreement, and shipped and received on board, as part of the privateer's crew; that, as part of the privateer's crew, they navigated the privateer down to Chester; that there the captain, without any objection to their skill or ability, ordered them on shore, and obliged them to abandon the privateer, and left them; and that afterwards he, and all the residue of the crew, destroyed the original articles of agreement, and executed a fresh set.

Under the circumstances stated and admitted, we are of opinion, that the libellants are entitled to a full proportion of all prizes which were captured during the cruize, for which the libellants were engaged, and from which they were forcibly excluded. We have already observed, that the right of the crew to captures is not founded on the articles of agreement; but on the privateer's commission. When the libellants were shipped at Philadelphia, and received on board by the captain as part of the crew, the right under the commission attached. This right they derived from an authority, paramount to the captain, and therefore the captain could not arbitrarily deprive them of it. But it is said, the captain, only, did the wrong; and therefore he alone should be responsible for it, and not the residue of the crew.

The libellants do not seek a compensation for a wrong; they are not in pursuit of damages for a tort. When they were shipped and received on board at Philadelphia, they then became part of the crew, and the right to capture and make prizes was a right they held jointly with the ship and officers, and residue of the crew. The articles of agreement directed the distribution, and ascertained the share; and the libel is for shares, according to the articles. The demand, therefore, which the libellants make, does not lessen the shares of the residue of the crew, nor call on them for a compensation: it is a demand, which the residue of the crew acknowledged, and agreed to, when they executed the articles. But it is said, on the dismission of the libellants, their proportion of the risk and labour fell on the residue of the crew; and, therefore, they ought to have an additional compensation beyond the articles of agreement. Whatever compensation they may, in justice, be entitled to, they cannot dispense with, nor derive it from the articles of agreement. The articles make no provision for such events, and no man, on board, can claim beyond the extent of the articles. On this ground it is, that although a mariner, who is once shipped on board, and is dismissed by the captain, without fault, before the voyage is ended, is entitled to his stipulated wages, for the whole voyage; yet the residue of the crew can only claim to the extent of their contract; although, by the dismission of such mariner, the risk and labour become proportionally greater.

But, it is said, that after the dismission of the libellants, new articles were executed by the captain, and residue of the crew; by which their shares of prizes were augmented, in proportion to the lessening of the crew, by the libellants' dismission; and, that the libellants' claim affects their right, under the subsequent articles. The captain and the residue of the crew could not cancel the original articles of agreement. When a contract is made, it can only be dissolved by the consent of all parties. The after articles, therefore, cannot affect the original articles, nor authorise a departure from them. These articles, instead of militating against the libellants' claim, tend to establish it on another ground: for, they shew that the residue of the crew approved of the dismission, and therefore ought to be considered as participes criminis, and equally responsible with the captain.

But, it is said, "that the libellants did not, by any personal service, contribute to the capture in the present case; that the prize was taken by the ship, the captain and officers, and residue of the crew; and, that although the libellants had a right under the commission to make captures, yet the right was not exercised in the capture of the prize in question." The ship, captain, officers, and crew, were joint-tenants of the right to capture and make prizes conceded by the commission. Whatever was acquired in consequence of this joint right and interest must be considered as common stock, and like the case of a joint partnership, not subject to survivorship. Where the right and interest is a joint concern, the question never can be material, which of the parties have been most active and alert: the only question that can arise must be, whether the joint concern and interest is fairly subsisting. Upon the whole, we are of opinion, that the decree below be affirmed, with costs to the libellants.

KEANE (MEADE v.). See Case No. 9,373.

KEARNES (MILBURNE v.). See Case No. 9,543.

KEARNEY (NAILOR v.). See Case No. 10,004.

## Cas No. 7,633.