SHAFFER *against* KINTZER.

*Saturday,*
*April 1st.*

IN ERROR.

THIS was a writ of error to the common pleas of *Berks* Entire dama-
county. The action below was brought by *Kintzer* against ges assessed
*Shaffer*, for slander; and in the declaration, the slanderous counts in
words were laid in four counts.

The *first* count charged, that whereas an action, for a de- is bad.
mand not exceeding 100 dollars, was depending between a cer- Judgment
tain *Christian Zerbe* and the said *Kintzer*, before *Daniel Lud-* and *venire de*
*wig*, esquire, one of the commonwealth's justices of the peace, *novo* award-
which action came to be tried on the 24th *December* 1805, To say of a
before the said *D. Ludwig*, then and there having full power *sworn false*,"
and authority to try, &c.; at which trial the same *John Kintzer* is not action-
then and there, before the same *D. L.*, was in due manner colloquium
sworn upon the holy evangelists, to say and certify the truth, being of an
the whole truth, and nothing but the truth, of the matters in affidavit be-
controversy, (he, the said *D. Ludwig* then and there having fore a justice
authority to administer such an oath) and all and singular the Nor are the
things which he knew to be true, concerning the matters in words help-
controversy, did testify and give in evidence, and the truth, nuendo of
the whole truth, &c. did depose, according to the oath perjury. It is
aforesaid; nevertheless, the said *Jacob Shaffer*, not being ig- an innuendo
norant of the premises, but maliciously contriving and intend- to elucidate
ing to cause the said *Kintzer* to be brought in danger of the connecting
pains and penalties of the laws made against those who com- them with
mit perjury, afterwards, in a certain discourse of and con- to which
cerning the said *Kintzer*, and the testimony so as aforesaid they refer,
sworn, in the presence and hearing &c. did falsely publish a meaning,
of the said *John Kintzer*, the following false, feigned, scan- not inconsis-
dalous, and defamatory words, to wit, " He" (the said *John* contradicto-
*Kintzer* meaning) " has sworn false;" (hereby meaning that ry to them;
the said *John Kintzer* had committed perjury.) alter their

The *second* count pursued the first, except as to the words nature.
spoken, which were laid in the second person, " You have
sworn false."

The *third* count charged, that whereas on the 24th *Decem-*
*ber* 1805, *the said* Kintzer *did, on the application of the said*
Shaffer, *make and declare an oath of him the said* Kintzer, *duly*
*taken and sworn before* Daniel Ludwig, *esquire, one of the com-*

*monwealth's justices of the peace, (then and there having authority to administer such oath) that he the said* John Kintzer *had not given up and relinquished a certain wager, which he had before that time made and concluded with a certain* Christian Zerbe, and did then and there swear to the same with great truth and veracity; nevertheless, the said *Shaffer*, maliciously intending to scandalize him, afterwards, &c. in a discourse concerning the said oath, falsely and maliciously spoke and published the following false, scandalous, and defamatory words, " He," (the said *John Kintzer* meaning) " has sworn " false;" *(hereby meaning that the said* John Kintzer *had committed perjury before the said* Daniel Ludwig, *esquire, in swearing that he the said* John Kintzer *had not given up the wager, which he had, before the taking of the said oath, made with the said* Christian Zerbe.)

The *fourth* count differed from the third, as the second did from the first.

The jury found a general verdict for the plaintiff, and assessed entire damages. The general errors were assigned; and the question was, whether the declaration contained any cause of action.

*Evans* for the plaintiff in error. The ground of action is, that the crime of perjury was imputed to *Kintzer;* and the question is, whether this appears by the declaration. To constitute perjury, there must be a lawful oath administered by one that hath authority, in some judicial proceeding. 3 *Inst.* 164. The objection to the first and second counts is, that the kind of demand, for which the action was brought, is not stated; without which it does not appear, that the justice had jurisdiction; and if he had not, all was *coram non judice*, and no perjury could be committed. 3 *Inst.* 166. Besides, *Kintzer* was a party; and an oath could not be lawfully administered to him, except in particular cases, which should have been set out. The third and fourth counts are, however, the most faulty; and, as the damages are entire, if one count is bad, judgment must be reversed. The words themselves do not import a perjury. " You have sworn false" may mean a false swearing in conversation; it is the same as to call one " a forsworn man," which, by all the authorities, is not actionable. 3 *Burn. Just.* 229. 18*th ed.* 3 *Inst.* 166. *Gore* v. *Moorton* (a), *Stanhope* v.

(a) *Cro. Eliz.* 905.

*Blith (a).* The case of *Holt* v. *Scholefield (b)* is in point. There
it was held, that saying of the plaintiff, " *Tim Holt* has forsworn
" himself, and I have three evidences that will prove it," would
not support an action; and the court laid down the true rule,
that either the words must be such as can be understood only
in a criminal sense, or it must be shewn by a colloquium in
the introductory part, that they have that meaning. Then what
is the colloquium here? It is of a voluntary, extrajudicial, affi-
davit, made before a justice of the peace. The magistrate had
no authority to administer the oath, for two reasons: there was
no cause depending; and the person who took the oath was a
party. 2 *Hawk. lib.* 1. *c.* 69. *sec.* 4. 4 *Bl. Comm.* 136. If the
words were even actionable by themselves, and would be in-
tended to impute a perjury, this colloquium takes away from
them that character. To say of a man, " You are a thief, you
" stole a plantation," is not actionable, because from the whole
it appears no crime was charged, which is essential according
to the rule in *Onslow* v. *Horne; (c)* so here, if to say " you
" have sworn false" is actionable, yet the colloquium cures
it; because it is that you have sworn falsely in an extrajudicial
affidavit, wherein a perjury could not be committed.

*Frazer* for defendant in error. There are three principles
by which this declaration is to be tried. 1. That the words must
be taken as they were understood by those who heard them.
2. That it is not necessary to allege that the oath was in a cause
depending; it is sufficient to say it was taken before one
having authority. 3. That after verdict the innuendos are to be
taken as true.

1. The rule of " *mitiori sensu*" has long been exploded.
Words are to be taken in the common sense, and according to
common parlance; *Bull. N. P.* 4. *Beavor* v. *Hides; (d)* and af-
ter verdict, the court will not be guessing and inventing a
mode, as it is said in *Peake* v. *Oldham (e)* in which it is barely
possible for the words to have been spoken without meaning
to charge the plaintiff with being guilty of a crime. The charge
of swearing falsely, in common sense, and common parlance,

1809.

SHAFFER
*v.*
KINTZER.

(a) 4 *Rep.* 15. *a.*          (d) 2 *Wils.* 300.
(b) 6 *D. & E.* 694.          (e) *Cowp.* 277.
(c) 3 *Wils.* 186.

1809.

SHAFFER
v.
KINTZER.

is an imputation of perjury. The case of *Hoyle* v. *Young*, (a) in principle, goes much further. But

2. As to the third and fourth counts, upon which alone there can be any doubt, there is a colloquium which fixes the charge to be of false swearing before a justice of the peace, whose authority is averred. That the party himself swore, is no objection; for in many cases his oath is taken, as to prove his book of original entries, or to wage his law; and *Colome's case* (b) was an action for imputing precisely this perjury. The only question then is, whether perjury may be committed in an affidavit before a justice of the peace. Now there is no case whatever to the contrary; and very often such an affidavit may be necessary. Indeed the case of *Gurneth* v. *Derry* (c) is a clear authority for a power in the justice to administer such an oath; because it decides that it is slander simply to charge a man with being forsworn before a justice of the peace. There the words were, " thou art a forsworn man, and didst " take a false oath against me before justice *Scawen*;" and judgment was arrested solely because it did not appear that *Scawen* was a justice of the peace; the whole court declaring, that " though to say that one is forsworn before a justice of " the peace is actionable," yet there it did not appear that he was a justice; and it might be the man's name was Justice. To the same point is *Ward* v. *Clark*. (d) In *Holt* v. *Scholefield*, it was not mentioned before whom the oath had been taken, or that any oath in fact had been taken.

3. The innuendo, however, is that *Shaffer* intended to impute perjury; and in this state it was ruled in *Rue* v. *Mitchell*, (e) that such an innuendo must be taken to be true after verdict. The words were " you have taken a false oath before squire " *Rush*" (meaning that the plaintiff had committed the crime of perjury in a certain oath, by the said plaintiff then lately taken before *William Rush*, esq. one of the justices, &c. in a cause before the said justice depending); and a motion in arrest of judgment was overruled.

*Ingersoll* in *reply*. The very definition of perjury is, that it must be committed in some judicial proceeding. It is not

(a) 1 *Wash.* 150.                    (d) 2 *Johnson* 10.
(b) *Cro. Jac.* 204.                  (e) 2 *Dall.* 58.
(c) 3 *Lev.* 166.

1809.

SHAFFER
*v.*
KINTZER.

enough that the party may think the oath necessary; it must relate to some civil or criminal prosecution. We therefore come to a short point, whether the third count speaks of a judicial proceeding. And it clearly does not. *Gurneth* v. *Derry* may be all right, if you suppose the court to speak with reference to a cause before the justice, and no doubt they do; but as to *Rue* v. *Mitchell*, though I hold in great respect the opinions of the judge who decided that cause, yet I must doubt whether it be law; it allows an innuendo to alter the whole meaning of the words, while its proper office is to explain.

TILGHMAN C. J. This cause comes before us on a writ of error to *Berks* county. It is an action of slander brought by *Kintzer* the defendant in error, against *Shaffer* the plaintiff in error. The declaration contains four counts. The jury found a general verdict for the plaintiff, and assessed entire damages; and judgment was entered on that verdict. The error assigned is, that the matters set forth in the *third* and *fourth* counts, constitute no legal cause of action; and that is the point for our decision.

In the *third* count it is declared that whereas the plaintiff did, on the application of the defendant, make and declare an oath, of him the said plaintiff, duly taken and sworn before *D. Ludwig* esq. one of the commonwealth's justices of the peace &c., then and there having authority to administer said oath, that the said plaintiff had not given up and relinquished a certain wager which he had made with a certain *Christian Zerbe*, (which said oath was true,) nevertheless the defendant, maliciously intending to injure him &c., in a discourse concerning the said oath &c., spoke the following false, scandalous and defamatory words: " He" (the said plaintiff meaning) " has sworn false," (meaning that the plaintiff had committed perjury before the said *D. Ludwig* esq., in swearing that he had not given up the said wager.) The *fourth* count is the same as the third, except that the words are laid to have been spoken of the plaintiff in the second person, " *you* have sworn false."

The objection to these counts is, that it is not alleged that any cause was depending before the justice, in the course of which the oath was administered. On the contrary it would

1809.

SHAFFER
v.
KINTZER.

seem that no cause was depending; but that the plaintiff took the oath voluntarily at the request of the defendant.

In order to constitute perjury, there must be a " lawful oath " administered in some judicial proceeding." False swearing, in a voluntary affidavit made before a justice of the peace, before whom no cause is depending, is not perjury; nor can it be punished by indictment, although it is a very immoral and disgraceful action. With regard to words which will support an action of slander, I take the rule to be as laid down by C. J. *De Grey* in the case of *Onslow* v. *Horne* in the year 1771; which is an authority in this court. They must contain an express imputation of " some crime liable to punishment, " some capital offence, or other infamous crime, or misde- " meanor." This rule is recognised and approved by the court of king's bench in *Holt* v. *Scholefield*, (1796) in which it was held that it was not actionable to say that a man had " forsworn " himself," (meaning that he had commited perjury). But it has been urged, by the counsel for the defendant in error, that the defect in the words is cured by the *innuendo* of perjury, which the jury have found to be true. It is the office of an *innuendo* to elucidate the words, by connecting them with the subject to which they refer, and averring a meaning not inconsistent with, or contradictory to, them; but it cannot alter the *nature* of the words. If A say of B that he cut down and carried away one of his trees, *innuendo* that B committed felony, this will not make the words actionable; because they do not in their nature import a felony. The case of *Rue* v. *Mitchell*, 2 *Dall.* 58. was cited and relied on by the counsel for the defendant in error. In that case the words were " you have taken " a false oath before squire *Rush*," (meaning that the plaintiff had committed *perjury* in an oath taken by him before *William Rush*, one of the justices &c., *in a cause before him depending*). The court were of opinion that the action might be supported, and laid considerable stress on the *innuendo*, which the jury had found to be true. There is this remarkable difference between that case and the one before us, that *there* the *innuendo* expressly asserted that the oath was taken in a *cause depending before the justice;* but in *this* case the *innuendo* contains no such averment. Besides, the *third* and *fourth* counts of the declaration, in the present case, describe the proceeding before the justice, in such a manner as to make it appear, that no cause was depending; and

if the innuendo contradict it, it is of no avail. I think the case of *Rue* v. *Mitchell* extended the efficacy of an *innuendo* far enough; rather farther than any former case had done; and I am not for going beyond it. If *innuendos* can *alter* the meaning of words, they may be employed to very mischievous purposes. A man may be made responsible not for what he said, but for what other persons may suppose he intended to say.

I am of opinion, on the whole, that the judgment in this case must be reversed, because the words charged in the *third* and *fourth* counts are not actionable.

YEATES J. concurred.

BRACKENRIDGE J. In the case of *Rue* v. *Mitchell*, 2 *Dall.* 58. " it appeared, on the trial of the cause, that the oath in question " was voluntarily taken by the plaintiff in order to satisfy the " defendant upon a controverted fact involved in the suit:" The voluntariness, spoken of here, is not of a nature with that which is properly called a voluntary oath; for there was a suit depending before the justice, and of which he had jurisdiction.

The jurisdiction of the justice in civil matters not being of common law origin, but taken from the civil law, where the judge determines the fact as well as the law, it has not been the understanding, under the acts establishing his jurisdiction, that he is bound by every rule of common law evidence; but that he may exercise, and it has been the usage to exercise, a chancery power, in purging the conscience, by admitting an oath on the part of the plaintiff in support of his demand, or an answer upon oath on the part of the defendant. And even in the courts of justice, and before a jury, if a party plaintiff or defendant waives the strict rule in regard to testimony, and offers to leave a matter to the oath of his adversary, I do not know that the court could reject it; the party called upon being willing to make the oath. For it is a renunciation by the party of a right which the law has introduced for his sake. Yet such could not be called a voluntary oath; for though the court or justice, before whom it is taken, could not impose it, yet it is imposed by the allegation which the oath is admitted to repel. Such was the occasion of the oath in the case of *Rue* v. *Mitchell;* and it was legally administered. Perjury was both imputable and punishable in such a case. Law wager still exists in our law; and

*1809.*

SHAFFER
*v.*
KINTZER.

1809.

SHAFFER
v.
KINTZER.

under certain forms of action, the defendant, at this day in courts of justice, would have his privilege to repel on his own oath and that of others, the allegation of the plaintiff. These oaths, though in a certain sense voluntary, would not be extra-judicial.

An oath administered by a justice where he has no jurisdiction, cannot be distinguished from an oath administered by one not a justice; for the proceeding of any tribunal, of a civil nature, must be founded on the plaint of a party; and where the tribunal proceeds without plaint, or entertains a plaint over which it has no cognisance, there is, in contemplation of law, no proceeding before it; and an oath taken in such a case is extrajudicial. A justice has no jurisdiction even on plaint made, where the jurisdiction is not given by positive statute, or where it is excluded by those principles which exclude the jurisdiction of every judicial forum; as where cognisance of the plaint is against public policy, or general convenience. Where a matter actually exists in dispute, and, superseding all necessity of process, it is agreed to be referred to the oath of a party on a certain particular, the oath will not be extrajudicial, provided the matter in dispute be of such a nature as is within the cognisance of the justice; for it is an agreement of the parties to terminate the controversy in this way. I will not say, that, even if the justice had not cognisance of the matter on the ground of cause of action, from the subject of the controversy, or from the quantum of the demand, an oath on such an agreement might not be administered to the parties, or to a witness offered by them, and agreed upon to be admitted; and that in that case it might not be judicial. But no agreement would warrant the administering an oath in a matter, the taking cognisance of which would be contrary to good policy: as in the case of a wager respecting an election, or the defect or infirmity of a third person. No prosecution would lie on an allegation of perjury in such a case; nor would an action of slander lie for an imputation of perjury in such a case. The law throws it entirely out of its protection, and can take no notice of it unless as a misdemeanor in the officer who administers. The law takes no notice, says *Blackstone* in his *Commentaries*, of any perjury but such as is committed in some court of justice having power to administer an oath; or before some magistrate, or proper officer invested with a similar authority, in some proceedings relative to

a civil suit, or a criminal prosecution. For it esteems all other oaths unnecessary at least, and therefore will not punish the breach of them. For which reason it is much to be questioned how far any magistrate is justifiable in taking a voluntary affidavit in any extrajudicial matter, as is now too frequent upon every petty occasion; since it is more than possible that by such idle oaths a man may frequently, *in foro conscientiæ*, incur the guilt, and at the same time evade the temporal penalties, of perjury. 4 *Bl. Comm.* 137. And *Coke* in his *Institutes* lays it down as has been quoted, that where the court has no authority to hold plea of the cause, it is *coram non judice.* 3 *Inst.* 166, cites *Bract. lib.* 4. *fo.* 180.

*1809.*

*Shaffer v. Kintzer.*

To apply these principles to the case before the court. The words laid to be spoken are " *that he swore falsely.*" These words do not, of themselves, necessarily import a charge of perjury, or any indictable offence. " Perjury is a crime com" mitted, when a lawful oath is ministered by any that hath " authority, to any person in any judicial proceeding, who swear" eth absolutely and falsely in a matter material to the issue, or " cause in question, by their own act, or by the subornation " of others." 3 *Inst.* 164. " If a man calleth another a per" jured man, he may have his action upon the case, because it " must be intended contrary to his oath in a judicial proceed" ing; but for calling him a forsworn man, no action doth lie, " because the forswearing may be extrajudicial." 3 *Inst.* 166. And to say generally that a man hath forsworn himself, is not actionable; because he may be forsworn in common conversation, or it may be an expression of mere passion and anger, 4 *Co.* 15. *b;* nor shall it be intended to be referred to a case where perjury may be committed.

It may be said, that after a verdict, it shall be taken to have been in evidence, that the oath, which was spoken of by the defendant, and said to have been sworn falsely, had been taken in the course of a judicial proceeding, and legally administered; but the introductory averment, as well as the *colloquium*, shews that the supposed defamatory words were applied to a mere voluntary oath, extrajudicially and illegally taken. So that it appears to me, the errors assigned in this cause are supported, and warrant a reversal of the judgment.

*Judgment reversed.*

1809.

SHAFFER
*v.*
KINTZER.

*Frazer* then moved the court to award a *venire de novo*, two of the counts being clearly good; and he cited the case of *Grant* v. *Astell, Doug.* 731, where *Buller* J. lays down the doctrine, which is adopted by the court, that where entire damages have been assessed upon several counts, some good, and others bad, and judgment for that reason is reversed, a court of, error may award a *venire de novo.*

TILGHMAN C. J. I believe there is a late case in which a *venire de novo* was refused in slander; but I see no reason for the distinction. The case in *Douglas* is good law and good sense; and I am willing to abide by it.

PER CURIAM,                            *Venire de novo* awarded.