# Griffith *against* Eshelman.

A defendant having cross-examined a plaintiff's witness on subjects irrelevant to the issue, will not be permitted to give evidence that the witness testified falsely on those subjects.

If a judgment for a defendant be reversed, for error which occurred on the trial, and it appear that the plaintiff's declaration contains no cause of action, a *venire facias de novo* will not be awarded.

ERROR to the district court of *Lancaster* county.

This was a *qui tam* action by John Griffith against Jacob Eshelman for taking usurious interest. On the trial of the cause the defendant cross-examined a witness of the plaintiff on subjects which were irrelevant to the issue, and then offered evidence to prove that the witness had testified falsely on those subjects; the evidence was received and the plaintiff took a bill of exceptions. On this ground the judgment of the court below was reversed; and upon an examination of the plaintiff's declaration, it appeared that there was no

cause of action set out in it.   The question then arose whether this court would award a *venire facias de novo.*

*Eastburn* and *Norris,* for plaintiff in error, on the point arising out of the bill of exceptions, cited, 1 *Phil. Ev.* 209 ; 1 *Stark. Ev.* 134; *3 Stark. Ev.* 1739, 1753, 1754 ; 1 *Wash. C. C. Rep.* 413; 2 *Gall.* 53 ; 2 *Camp. N. C.* 638.

*Hopkins,* for defendant in error, on the first point, cited, *Gilb. Ev.* 153; *Peake's Ev.* 197 ; 1 *Phil. Ev.* 228 ; Cameron v. Montgomery, 13 *Serg. & Rawle* 128.   And that a *venire facias de novo* ought not to be awarded : 4 *East* 502 ; *Plowd.* 66; Grasser v. Eckert, 1 *Binn.* 575 ; 6 *Serg. & Rawle* 295 ; 14 *Serg. & Rawle* 200 ; 1 *Bro. Rep.* 250 ; Miller v. Ralston, 1 *Serg. & Rawle* 309 ; Ebersole v. Cook, 5 *Binn.* 51; 1 *Penns. Prac.* 277 ; 8 *Serg. & Rawle* 135 ; *Ibid.* 573 ; 5 *Serg. & Rawle* 351; 3 *Serg. & Rawle* 144; 4 *Serg. & Rawle* 396; 1 *Salk.* 262, 401, *pl.* 8 ; 1 *Roll. Ab.* 774, *pl.* 1.

The opinion of the Court was delivered by

KENNEDY, J.—This was a *qui tam* action in debt, commenced in the district court of Lancaster county, by the plaintiff in error, to recover a penalty for taking usurious interest upon a loan of 500 dollars made by the defendant to Thomas Griffith, the father of the plaintiff, for the space of one year from the 3d day of January 1822, in violation of the act of assembly.

On the trial of the cause, after evidence had been given by the plaintiff showing that the repayment of the money lent by the defendant to Thomas Griffith, for which it was alleged the illegal interest was taken, had been secured by a judgment bond given by Griffith to the defendant, dated on the 3d of January 1822, for 530 dollars, payable with interest thereon in one year from that date, upon which judgment had been entered and a lien thereby created for the amount upon the real estate of Griffith, subject, however, to a prior judgment of 1000 dollars against him for money previously borrowed of the defendant; that under this latter judgment, and after the 530 dollars had become payable, the real estate of Griffith, the debtor, having been seized and taken in execution, was sold by the sheriff, and out of the money arising therefrom both judgments were paid to the defendant : the plaintiff produced his father, Thomas Griffith, to prove the usury, who after being examined in chief, upon his cross-examination in answer to interrogatories put to him by the defendant's counsel testified, among other things, that " he did not say that if the sale (meaning the sheriff's sale of his real estate) was put off to another day that he would raise the money; and that Jacob Eshelman did not agree at his request to put off the sale ;" and again, that " George Phillips was not engaged to buy in the property for his (witness's) daughter Beulah, nor for any of the family ; he bought it in for himself and owns it yet ; he

(witness) moved to set aside the sheriff's sale because he thought it was sold too low—that was the only ground."

After the plaintiff had closed his testimony, the defendant, in order to contradict and discredit Thomas Griffith, the witness for the plaintiff, in what he testified to as recited above, offered to prove by William Lechler, then deputy sheriff, that at a time when the real estate of Thomas Griffith was about to be sold by the sheriff at the suit of the defendant, Jacob Eshelman, previously to the time when it was actually sold, Thomas Griffith asked for time, saying that he would raise the money if he had some time ; and that Jacob Eshelman accordingly gave him the indulgence he asked for, and that no sale was then made : and further to read in evidence an affidavit made by Thomas Griffith, the witness, after the sale of his real estate had taken place, which was filed in the prothonotary's office and made the foundation of a rule to set the sale aside ; in which he stated, among other things, that George Phillips, who had been returned by the sheriff as the purchaser of the property, "told him that he had not made the purchase for himself, but that he intended it for the witness's daughter Beulah, and that the title should be made to her. That he, George Phillips, would pay for the property and take a judgment from her for the same, &c. The said George Phillips has since refused to comply with his said promise, and insists upon having the deed made to himself, inasmuch as he would thereby have a great bargain in the purchase, and thus deprive the witness's daughter of the property to which she is justly entitled."

This testimony was objected to by the counsel for the plaintiff, as being altogether irrelevant to the issue. The court however received it, and the plaintiff's counsel excepted thereto, and have assigned it for error here.

It is proper first to observe, that the sale of Thomas Griffith, the witness's real estate, was not made under the judgment for the money alleged to have been loaned upon usurious interest, but upon an elder judgment, at the suit of the same party. The sale, therefore, was not otherwise material to the trial of the issue in this action, than to show that the money, said to be loaned upon usurious interest, was repaid by the witness to the defendant. Whether the witness had ever asked the defendant to postpone the sale, alleging that he would raise the money, and whether the defendant, upon such request made by the witness, did so or not, were facts collateral to the issue, and altogether distinct from it. And whether George Phillips was employed to buy for the daughter of the witness, or any of his family, appears to me to have been equally so. Supposing them to have been all true, they were not facts of such a nature as showed a hostile feeling on the part of the witness towards the defendant, and admissible on that ground, in order to detract from his credit. Or if the witness had answered to all these questions in the affirmative instead of the negative, as he did, I think it is perfectly clear that they would have been wholly irrelevant to the matter in issue ; be-

[Griffith v. Eshelman.]

cause they would not in the slightest degree have tended to prove or disprove the commission of the usury; and therefore it was not competent for the defendant, on his cross-examination, to question the witness concerning them.   If such a course were to be tolerated, for the purpose of afterwards impeaching the testimony of the witness, by contradicting him in case he should answer in the negative, it would render the inquiry, as Mr Starkie very justly observes, which ought to be single and confined to the matter in issue, intolerably complicated and prolix, and cause it to branch out into an indefinite number of collateral issues.   1 *Stark. Ev. part* 2, 134, 135; Spenceley *v.* De Willott, 7 *East* 109 ; Odiorne *v.* Winkley, 2 *Gall.* 53.

Besides the danger of rendering the trial of a cause interminable by such testimony, it is very obvious that the jury may likewise be readily and greatly misled by it, and induced to give a verdict fraught with the highest degree of injustice.   For this reason, it is never too late to arrest it, upon objection being made by the adverse party. And hence, if the questions as to collateral facts be put to the witness, as was done in this case, for the purpose of discrediting his testimony, and they are answered by him, his answers must be taken as conclusive, and no evidence can be admitted afterwards to contradict him.   1 *Stark. Ev. part* 2, 134, 135 ; Harris *v.* Tippett, 2 *Camp.* 637; Rex *v.* Watson, 2 *Stark. N. P. C.* 157.

The rule on this subject lies at the very foundation of what has ever been deemed necessary to constitute perjury.   The matter falsely testified to, must be material to the issue; otherwise, no perjury has been committed : and this furnishes an additional reason why questions relating to collateral facts, not material to the issue, ought not to be put nor answered, since the witness, although he wilfully answers them untruly, cannot be punished for it.

It will be found that all our rules of evidence, which have been established by the experience and wisdom of past ages, are admirably adapted to the investigation of truth, and at the same time to the dispatch of business; and therefore ought ever to be regarded with the most strict observance.

The judgment of the district court is reversed.   The motion for a *venire facias de novo* is held over for further discussion.

The prayer of the plaintiff in error for a *venire de novo* is objected to by the defendant, because there is no cause of action whatever set out in the record to be tried : that the plaintiff, in short, from his own showing in his declaration, has no cause of action.   The plaintiff, however, alleges that he has a good cause of action, of which he gave evidence on the trial of the cause; and although it may not be set forth in the declaration as it ought to be, yet if the record be remitted with an award of a *venire de novo*, he can, upon application to the court below, have his declaration amended so as to introduce into it the cause of action intended.   Its being a *qui tam* action, and of a penal character, is no objection, as has been contended, to the amendment ; for in Mace *qui tam v.* Lovett, 5 *Burr.* 2833, which

was an action of debt brought to recover a penalty for usury, alleged to have been committed by the defendant, an amendment was allowed by the court in changing the sum of 100 pounds to 88 pounds, after the record had been made up, carried down to trial, and withdrawn by the plaintiff: so in Jones *v.* Ross, 2 *Dall.* 143, the same principle is fully recognized.

It may be observed, however, that such amendments are not favoured where much time has elapsed after bringing the suit; and accordingly, in Goff *qui tam v.* Popplewell, 2 *Term Rep.* 707, though the pleadings were still in paper, an amendment was refused because the action had been pending for four years. At common law, indeed, there seems to be no distinction in permitting amendments to be made, whether the action be civil or penal. 2 *Term Rep.* 708; Barber *v.* M'Henry, 6 *Wend.* 516; Bonefield *qui tam v.* Miller, 2 *Burr.* 1099. But the statutes authorizing amendments of the record itself do not extend to criminal prosecutions. 2 *Burr.* 1099. And although our act of assembly of the 21st of March 1806 be applicable to penal as well as civil actions, yet it is confined to amendments permitted at common law, which consist in matters of form and not in matters of substance; and hence, in the Canal Company *v.* Parker, 4 *Yeates* 363, where the declaration laid that the defendant was indebted to the plaintiff for a subscription to the canal company, with *interest*, it was held that an additional count demanding the penalty of five *per cent* per month, under the act incorporating the company, could not be allowed, because it was matter of substance, and therefore not within the provisions of the act. The act, it would seem, goes no further in altering the common law than to render an application to amend unobjectionable, in point of time, by authorizing it to be made *on the trial* as well as before, which, without its aid, could not be done after the trial has been commenced; Farmers' and Mechanics' Bank *v.* Israel, 6 *Serg. & Rawle* 294, 295; Wilson *v.* Hamilton, 4 *Serg. & Rawle* 240; and likewise in making it obligatory on the court to allow the amendment where it comes within the act, or otherwise it will be error that may be reached upon a writ of error. Young *v.* The Commonwealth, 6 *Binn.* 88; Clymer *v.* Thomas, 7 *Serg. & Rawle* 178; Glasser *v.* Lowry, 8 *Serg. & Rawle* 498; Maus *v.* Montgomery, 10 *Serg. & Rawle* 192; Newlin *v.* Palmer, 11 *Serg. & Rawle* 101. And in Mace *qui tam v.* Lovett, 5 *Burr.* 2833, already referred to, lord Mansfield said the court would not alter the *charge* in the declaration, which was, that the defendant had taken twelve per cent upon 100 pounds, whereas, in fact, only 88 pounds were actually paid; and the amendment asked for being to alter the sum 100 pounds into 88 pounds, his lordship said "it could not alter the *charge,* but would merely *reduce* the sum or penalty claimed by the plaintiff." But in the case at bar, an amendment supplying merely a want of form would be of no avail to the plaintiff; for in his declaration he has set out no cause of action whatever; or, perhaps, more properly speaking, he has

shown clearly that he has no cause of action.    There is really no want of form in the declaration, that I can perceive.    The plaintiff in it charges the defendant with having received 30 dollars from Thomas Griffith, upon a corrupt and usurious contract, to forbear for the space of one year with the said Thomas Griffith for the repayment of the sum of 400 dollars, lent and advanced by the defendant to the said Thomas Griffith, and likewise for the payment of the further sums of 45 dollars interest, owing by the said Thomas Griffith to the defendant, upon an obligation of 1000 dollars which he held upon him, and 55 dollars, the amount of a note drawn by the said Thomas in favour of Benjamin Breckbill, who transferred the same to the defendant, making in all five hundred dollars; which said 30 dollars, so taken and received by the defendant, as the plaintiff avers in his declaration, exceeds the rate of six pounds for the forbearing of 100 pounds for one year, contrary to the form of the statute in such case made and provided.    The statute here alluded to prohibits the taking of more than *six per cent per annum ;* but according to the plaintiff's own showing in his declaration, Thomas Griffith borrowed, and actually received from the defendant 400 dollars in cash, beside 45 dollars interest, which he owed to him upon an obligation of 1000 dollars, and 55 dollars, the amount of the note, making in all a real debt of 500 dollars which Thomas Griffith owed to the defendant ; and for forbearing payment of this sum for the space of one year, the defendant is charged with having received 30 dollars, which is precisely *six per cent per annum*, or at the rate of six pounds for the forbearance of 100 pounds for the space of one year : and hence it appears that the statute against usury was not violated in this case by the defendant.

Now according to the doctrine and rule laid down in Ebersol *v.* Krugg and Wife, 5 *Binn.* 51, the amendment which it would be necessary for the plaintiff to have made before he could recover in this action, is such as he has no right to claim.    In that case Krugg and Wife were the plaintiffs in the court below, and had joined slander of the husband with slander of the wife in the declaration, and this court held, that the act of 1806 did not extend so far as to authorize the court to permit them to amend by striking out the slander of the husband, charged in the declaration, and to go on and try the slander against the wife.    It was also ruled in that case, that even if the plaintiffs below could have obtained the amendment, still they would not have been entitled to a *venire de novo;* for, as the court said, " the object of such a writ is to submit the *same* cause to the consideration of another jury, having corrected an error which took place with respect to the former trial; as where there has been some irregularity in choosing or returning the jury, or where there has been error *in law* in rejecting competent or admitting incompetent evidence : and of late the same remedy has been extended to cases where entire damages have been assessed on several counts, some of which are bad, in order that the jury may have an opportunity of assessing the dam-

ages on each count severally." But surely the reason for declining to grant a *venire de novo*, in the case under consideration, is more obvious and much stronger, seeing the plaintiff has shown by his declaration that he has *no* cause of action at all to be tried, than it was in Ebersol *v.* Krugg and Wife, where the plaintiffs below had introduced two distinct causes of action into their declaration, one of which was not only strictly appropriate to the nature of the writ, but likewise to the parties in it. Confining ourselves then to the record, which seems to be the approved course, and perhaps the only safe one, for reasons upon which to decide whether a *venire de novo* shall be awarded or not, it is evident that to grant one in this case could answer no other purpose than to vex and harass the defendant, without any chance of success on the part of the plaintiff; for, according to the case of Ebersol *v.* Krugg, a *venire de novo* cannot be awarded for the purpose of trying a *new* cause of action, or any *other* than that which appears upon the record. Besides, it seems to me that the very point presented here, in this case, was ruled in the cases of Langer *v.* Parish, 8 *Serg. & Rawle* 134 ; Miller *v.* Ralston, 1 *Serg. & Rawle* 309, and Reed *v.* Collins, 5 *Serg. & Rawle* 351, where, by the declaration in each of these cases, it appeared that the cause of action set out therein accrued after the plaintiff had commenced his suit. The counsel for the defendants in error, in these cases, being the plaintiffs below, upon the reversal of the judgments by this court, prayed a *venire de novo* to be awarded; with a view to have another trial after obtaining an amendment of the declarations, by altering the dates of the promises and making them prior to the commencement of the actions respectively, and doubtless, too, according to the truth of the cases, for breach of which the actions had been brought: but the court refused to grant a *venire de novo*, because "it appeared from the plaintiffs' own averment that there was *no* cause of action *at the time* the suit was *commenced*." The circumstance of the court below having committed an error in this case against the plaintiff in the course of the trial, is not sufficient to distinguish it from the cases just cited, and to take it out of the rule there laid down as to a *venire de novo*, when it appears from the record, according to the plaintiff's own showing, that he has really no cause of action to be tried ; and when he, without a *venire de novo* being granted, will be in quite as good a situation, as if no such error had been committed by the court below, and the jury had found a verdict in his favour: because if such had been the case, the defendant would have been entitled to have the judgment arrested, on account of no cause of action whatever being set forth in the plaintiff's declaration, in which event it cannot be pretended that a *venire de novo* could have been awarded. To grant it in such a case would be against all precedent as well as reason. Or instead of demanding an arrest of the judgment, the defendant perhaps would have had a right to have claimed a judgment in his favour *veredicto non obstante;* as was done in Doctor Slocumb's case, *Cro. Car.* 442, where the court, after a verdict for

[Griffith v. Eshelman.]

the plaintiff, gave a judgment notwithstanding for the defendant, because the words charged in the declaration to have been spoken by the defendant of the plaintiff were not actionable, which would clearly have precluded and put an end to all further proceeding in the case.   Or suppose in case of the verdict's having been given for the plaintiff, the court below had rendered judgment accordingly in his favour, and the defendant had sued out a writ of error in the case, the judgment must have been reversed; because admitting all the plaintiff has alleged in his declaration to be true, it is manifest that he has no cause of action; and for this reason it would be highly improper to grant him a *venire de novo*, as it could tend to answer no other purpose than to harass and vex the defendant unjustly.

Here, although it may be considered a general rule, that this court, in a writ of error sued out by either plaintiff or defendant, will grant a *venire de novo* wherever the judgment of the court below is reversed for an error committed in the course of the trial of the cause ; yet, as an exception to this rule, it must be understood that it will not be done where it appears, as in this case, from the plaintiff's own showing, that he has no cause of action to try ; or that he cannot legally sustain, in the same action, all the causes which he has thought proper to join in his declaration.   In addition to the cases already cited on this head, see Shaffer *v.* Kintzer, 1 *Binn.* 537 ; Sterett *v.* Bull, 1 *Binn.* 238.   And it is certainly the duty of the court upon a writ of error to examine into the whole of the record, in order to guard against rendering a judgment, or making an order in the cause that is not fully warranted by the record itself ; and, at the same time, to make only such as the record will justify and support.   Delamere *v.* Heskins, 9 *Vin. Abr.* 580, *pl.* 1 ; 10 *Vin. Abr.* 24, *pl.* 1 ; *Plowd.* 66 ; *Hardr.* 28 ; Le Bret *v.* Papellon, 4 *East* 502 ; Grasser *v.* Eckert, 1 *Binn.* 587.   In this respect the court is not even bound or limited by the prayer of the party himself in error ; for in Street *v.* Hopkinson and others, 2 *Stran.* 1055 *;* S. C. *Rep. Temp. Hardw.* 345, the only doubt was, as to the principal judgment ; whether, as the defendant in error had concluded with a prayer that the judgment be *affirmed*, the court could give the proper judgment ; which was, that the plaintiffs in the writ of error be *barred* of their writ of error.   And the court determined, that they were not bound by the prayer of an improper judgment ; and, therefore, pronounced the rule that the plaintiffs in error should be *barred*.   See also, to the same effect, Le Bret *v.* Papillon, 4 *East* 508, 509.

Judgment reversed, and a *venire de novo* refused.