## Commonwealth v. Stinerock.

*Criminal law — Statutory rape — Consent — Reputation of girl — Act of May 19, 1887.*

1. Where a defendant indicted for statutory rape denies his guilt, he is precluded from showing that the girl had consented to the intercourse.

2. In such an indictment it is not competent for the defendant to cross-examine the girl as to whether she had had intercourse with other men for the purpose of afterwards impeaching her testimony, by contradicting her in case she should answer in the negative.

3. In the absence of evidence to show that the girl was not of good repute and that the carnal knowledge was with her consent, the proviso to paragraph 1 of the Act of May 19, 1887, P. L. 128, has no application.

Defendant's motion and reasons for a new trial. O. & T. Montgomery Co., April Sess., 1923, No. 31.

*A. H. Hendricks,* for Commonwealth.

*C. T. Larzelere* and *Theo. Lane Bean,* for defendant.

MILLER, P. J., Dec. 31, 1923.—The defendant was here to answer two bills: One charging statutory rape and bastardy, and the other adultery. As the

child had been born outside the jurisdiction, the district attorney stated in his opening that the bastardy charge would not be pressed, and Bill No. 31 would be amended accordingly. Such was afterwards done, and the defendant was, therefore, tried on the charges of statutory rape and adultery only.

As he was a married man, and because of the age of the girl, if he was found guilty of one of these offences, it necessarily followed that he was guilty of the other. He was convicted of both.

The defendant, with his wife and child, lived next door to the home of the girl in question. The families were more than ordinarily intimate, and the members of each spent much time in the home of the other. Elsie Nice even called the defendant "Daddy Stinerock." The alleged intercourse started in latter May or early June, 1922, and ended in September, and the girl testified that it had happened on only four occasions. As it is claimed to have taken place in secret, and the defendant flatly denied that it had taken place at all, all the direct and positive testimony on the subject came from the mouths of these two. The issue between them was, therefore, clean-cut, and consisted of the answer to the question of whether defendant had had intercourse with the girl on any one or more of the occasions alleged. The jury had, of course, to determine which of the two was speaking the truth, and, because of the nature of the case, anything that threw light on their credibility, anything that impeached either of them, was proper for the jury's consideration, so long as it was of a character that could lawfully be used for the purpose and was brought to their attention in a manner recognized by law.

It is to be noted that, as defendant denied his guilt, he was precluded from showing that the girl had consented to the intercourse; also, that he made no attempt to prove that Elsie Nice was not of good repute for chastity. The respective ages of the parties, and the fact that the defendant was a married man being not in controversy, the case was, therefore, and as stated already, tried on the single issue of fact mentioned above.

There were fifteen reasons filed in support of the motion for a new trial, and, for brevity's sake, they will be discussed generally. Any finding by a jury must arise in the evidence. None such was offered to show that the girl was not of good repute, and that the carnal knowledge was with her consent. The proviso to the Act of May 19, 1887, par. 1, P. L. 128, therefore, had no application to the case. To have instructed the jury concerning it would have been useless, unnecessary and confusing. By the trial judge's failure to do so the defendant was not, and could not have been, injured. It is difficult to conceive how error can be committed by failure to instruct the jury concerning principles of law which have no application to the case on trial.

When Elsie Nice was on the stand, she was cross-examined by counsel for defendant as follows: "Do you want to deny here and now that Charles Gelbert is the father of that child? A. I deny it. Q. Do you deny that he had intercourse with you? A. Never had intercourse with me? Q. You swear to that? A. I swear to that. Q. Did you not have intercourse with Van Doran Douglass at or about, within a month of, the time that you declare that you became pregnant?"

All the foregoing went in without objection until the last question was asked, when it was objected to, and the objection was sustained. As we understand it, this cross-examination was intended to be, in effect at least, an attack upon the credibility of the witness. Later, the defendant offered to show by Charles Gelbert, as part of defendant's case in chief, that he had had intercourse with Elsie Nice in August, 1922, at a time when, if conception had

4 D. & C.

taken place, a normal nine months' old child would have been born at approximately the date of the birth of the child of the said Elsie Nice. Objection to this offer was also sustained. As the paternity of the child was not at issue, this offer must also have been directed to the credibility of Elsie Nice as a witness.

Mr. Justice Kennedy in the old case of Griffith v. Eshelman, 4 Watts, 51, said: "It will be found that all our rules of evidence, which have been established by the experience and wisdom of past ages, are admirably adapted to the investigation of truth, and, at the same time, to the dispatch of business; and, therefore, ought ever to be regarded with the most strict observance."

Under the settled law, it was not competent for the defendant, on his cross-examination, to question Elsie Nice, the witness, concerning any of these matters. If such a course were to be tolerated, for the purpose of afterwards impeaching the testimony of the witness by contradicting her in case she should answer in the negative, it would render the inquiry, as Mr. Starkie very justly observes, which ought to be single and confined to the matter in issue, intolerably complicated and prolix, and cause it to branch out into an indefinite number of collateral issues: Griffith v. Eshelman, 4 Watts, 51.

Nowhere better than in Henry on Trial Evidence, par. 470, do we find the principle of law involved here expressed. Mr. Henry says: "The answers of a witness on cross-examination as to matters material to the issue may be contradicted by other witnesses. But ground for contradicting the witness cannot be laid by cross-examining him on irrelevant or collateral matters, and the party so cross-examining is bound by his answers and may not offer evidence to disprove them, otherwise the investigation might branch out into any number of collateral issues on the mere question of credibility. The test of materiality of a fact brought out on cross-examination is whether the party cross-examining would be entitled to prove it as a part of his own case."

On the issue being tried in the instant case, the defendant would not have been entitled to prove Elsie Nice's intercourse with others as a part of his own case. When she was cross-examined as to such alleged intercourse with Charles Gelbert, she was asked concerning an irrelevant and collateral matter; the defendant was bound by her answer, and he had no right to contradict her. Cross-examination as to her relations with Van Doran Douglass, which was objected to, was, for the same reason, properly not allowed. We are not convinced of error in these connections.

We have carefully considered all the reasons filed, and while the industry and ingenuity of counsel for defendant are to be commended, it is felt that, except as to the matters discussed already, none of the reasons requires either specific or extended comment. We content ourselves with referring to the record.

This defendant had a fair trial, and, in our opinion, was rightly convicted. This business man, of settled age and knowledge of the world, made an extremely poor impression while on the witness-stand.

The wronged girl is of respectable parentage and was a soloist in the choir of her church and a pupil in the local high school. She now is the mother of an illegitimate child. If, notwithstanding her family connections, careful bringing up and activities in her church and school, she was, at fifteen years of age, the unchaste and grossly immoral girl the defendant would have us believe, it should have been a matter of little, if any, difficulty to have shown at the trial she was not of good repute. But such was not attempted. The jury would have been justified in finding that she had consented to inter-

course with the defendant and the grade of his crime might have been reduced, but, in the absence of reputation testimony, such finding would have been of no advantage to him.

The single and clean-cut issue of fact submitted to the jury under the testimony was, as stated already, whether or not the defendant had carnal knowledge of the girl on one or more of the occasions in question. They found against him, and we are not satisfied that injustice was done. It follows that a new trial must be refused.

And now, Dec. 31, 1923, after hearing arguments of counsel and mature consideration, the motion for a new trial is overruled, the reasons are dismissed, a new trial is refused, and the defendant is ordered to appear in open court on Wednesday, Jan. 2, 1924, at 10 o'clock A. M., for sentence.

From Aaron S. Swartz, Jr., Norristown, Pa.