## SMITH *v.* STEWART.

Words charging the plaintiff with having been a convict in the penitentiary of a sister state are actionable.

And it is no variance, if the words laid be proved to have been preceded by "if reports be true."

To justify the repetition of slanderous words, the name of the informer must be given at the time, so as to give an action against him; and it must also be shown that they were repeated on a justifiable occasion.

The addition of the words, "I can prove it," to a qualified slander, is equivalent to an unqualified assertion. Per Coulter, J.

In error from the Common Pleas of Cumberland.

*June* 2. Case for slander. The first count laid the words "That man (meaning the plaintiff) was in the penitentiary of Ohio, (meaning that plaintiff was a convict in the penitentiary of Ohio,) and I (meaning defendant) can prove it." The second count laid the same words with an innuendo that plaintiff had been imprisoned for the commission of a crime. The third laid the words "he is a convict, and I can prove it." The counts also contained an innuendo—that plaintiff had been convicted of *an infamous crime.* The plea of justification was withdrawn, and the cause went to trial on the general issue.

On the trial, plaintiff proved that, when about offering his vote at an election, defendant objected to him, and gave as a reason, "he is a convict, and has been in the Ohio penitentiary." There was contradictory evidence as to whether he said he could prove it. Under objection, defendant proved reports of the truth of his assertion communicated to him. He also gave evidence that he had said, "If reports be true, he is," &c.

In answer to the defendant's points, the court, (HEPBURN, P. J.,) on the authority of McPherson *v.* Daniels, 10 Barn. & Cress. 263, told the jury if the words actually spoken were, "If reports be true," &c., there was a fatal variance; and 2dly, That the words laid were not actionable without proof of special damage.

*Gaullagher*, for plaintiff in error.—To say "*he keeps false books and I can prove it,*" is actionable; Burtch *v.* Nickerson, 17 Johns. 217; and so is it to say of a merchant, "*that a debt will be lost because he is unable to pay it;*" Mott *v.* Comstock, 7 Cow. 654. The words here, viz.: "*he is a convict; he was in the penitentiary of Ohio,*" mean, that he had been convicted of an infamous crime, and that he had been convicted and imprisoned for the commis-

sion of that crime in the Ohio penitentiary. If these words, imputing the charge that they certainly do, be not actionable, then the following words are not actionable, viz.: "*he is a returned convict;*" and yet it was held, that these words were actionable, as imputing, that although the punishment had been suffered, the obloquy still remained; 2 Moody and Robinson, 119; 2 Wilson, 300; 10 Bing. 206; 2 Leigh's N. P. 1350; 2 Wheat. Selwyn, 429, 430.

*Graham* and *Watts*, for defendant in error.—An innuendo cannot alter the meaning of words spoken; 1 Binn. 542. So here, *convict* does not mean necessarily convicted of an infamous crime, it may have been of assault and battery, &c.; Bouvier Dic. *verb.* At all events damage must be specially proved, unless there be a crime charged which may be punished; Shaffer *v.* Kintzer, 1 Binn. 542; 5 Binn. 219; 3 Serg. & Rawle, 257; Harvey *v.* Boies, 1 Penna. Rep. 13. In the latter case, the true criterion is established. "It is not the infamy of the charge, but the danger of sustaining a criminal prosecution." Here, there could be no possibility of a conviction, for the punishment had been endured; nor is there any averment of a charge depriving him of any right or enjoyment.

*June* 14. COULTER, J., (after stating the case).—It is by no means necessary to set out in the *narr.* all the words spoken by the defendant. In this case the plaintiff did prove, by several witnesses, the speaking of the words exactly as laid. This, however, did not prevent the defendant from showing that they were uttered with a qualification or reservation which made them either harmless, or gave the plaintiff a good cause of action against some other person. It was not therefore so much a question of variance, as of excuse or defence to the action. The rule is, that where the words are substantially proved, there is no variance; and on the plea of not guilty, that is sufficient to maintain the issue. And there cannot be a reasonable doubt, as to whether the words laid were substantially proved in the case at bar. It would not have been amiss, if the court had told the jury that if they believed those witnesses who testified, that when the defendant uttered the words, he added, that he could prove it, all excuse or qualification was brushed away at a swoop, and he thereby took all the responsibility on himself. But the addition of the words, "if report be true," supposing they were uttered by the defendant, did not constitute a variance. They did not require a different defence from those laid in the *narr.* The case of McPherson *v.* Daniels, 10 Barn. & Cress. 263, cited by

2 I

the court below, is rather an authority against the position of the court. For it is in that case expressly asserted by all the judges, that the defendant who seeks to shield himself under a report, must show not only that he gave the author at the time he uttered the words, but in addition, that they were spoken on a justifiable occasion; thus affording the plaintiff, at the time, a good cause of action against the original author. The plea of the defendant was adjudged vicious, because it did not admit the speaking of the words as laid, and then set out that he had given his author, &c., as a defence to the action. It is true, that Mr. Justice Bayley states, that if the defendant had relied on the plea of not guilty, the plaintiff would have been bound to prove an unqualified charge, as he had so laid it in his *narr*. But how unqualified? Why, by any thing that renders it innoxious to the plaintiff, or which afforded defendant a defence to the action. The dictum was made with a view to show that, by pleading not guilty, the defendant would have had the advantage of a special plea, disclosing sufficient matter, and regularly pleaded. But if that which was regularly pleaded would afford no justification or defeat the action, how could it do so when made apparent by evidence. In either case, the charge or imputation was left to fester, without medicament or cure. The substance and legal effect of the charge was the same. In the language of Lord Kenyon, (Davis *v.* Lewis, 7 Term Rep. 19,) "the plaintiff can only impute the slander to him who utters it, if the latter does not mention the name of the person from whom he heard it." If it were otherwise, one individual might ruin the loftiest reputation, and torture the purest heart in the country, by secretly circulating and giving the embodiment of report (such as it is) to some vile slander, and then setting up the very *slander itself* as a defence to an action for uttering and publishing it. *If reports be true:* This language designates no individual, lights upon no one, describes nobody, and is in fact, nothing but the mere ideal of irresponsibility, which the wicked conjure up to shelter them, whilst they inflict a wound. The true criterion of a fatal variance is the necessity it induces, or the opportunity it furnishes, to make a different defence from what the words laid required; 13 East, 564. But ever since the Earl of Northampton's case, in 12 Coke, 132, it has been held that it is no defence whatever to an action, to allege a report at the time of speaking the words, unless the name of the author is given, and a good action furnished against him. The words assumed in defendant's point are substantially and legally of the same effect as those laid in the *narr*.

The next question is, are the words actionable? In many cases, words which induce no apparent or imminent danger of disability or criminal punishment, are those which most effectually destroy reputation; and no instance more apt than the one in hand to illustrate the principle. A convict is a walking monument of whatever the common mind loathes in reputation. In the English law books, conviction and attainder are often used synonymously, and attainder is defined to be the *stain or corruption of blood*, of a criminal capitally condemned. A penitentiary, with us, is the lazar-house of sin and crime, where the beautiful ideal of the law supposes that solitude and repentance will expiate and wash away the guilt; but which in the common mind only deepens the disgrace. A bold thief, never convicted, is not half so bad, in the apprehension of the common mind, as one detected and convicted, who comes abroad with the odour of the penitentiary upon him. There is some chance for the one in the world, but little or none for the other. According to the evidence, the words here used were uttered upon the occasion of an election by the citizens, just as the plaintiff was handing in his vote; and uttered with a view and purpose of preventing his enjoying the highest privilege of a citizen. Now it is the policy of our law to enjoin peace and tranquillity at such places, as if in the presence of the majesty of the people and the laws. But if false and malicious language of this description (and it is averred to be false and malicious in the *narr.*) may be uttered with impunity and without legal redress, the timid and the sensitive may be driven from the polls, and the bold and resolute will seek protection from the bowie knife or the cudgel. If uttered anywhere, they endanger the public peace, wound the heart, and destroy reputation. It is true, it has been held that the mere imputation of an offence against morality, which involves no legal punishment or disability as a crime, is not actionable. But the principle has attached itself only to a class of cases, where the law had affixed no infamy or disability by making them indictable and punishable at hard labour. They generally refer to a mere breach of trust, involuntary oaths, or oaths taken before an ecclesiastical forum, over which the temporal arm does not reach. But those cases have no similarity to the present, although they are the cases which the learned court cite.

Here the punishment, by a fair construction of the words, had been suffered, although there might be room from the manner and occasion of utterance, to infer that an *escaped* convict (who would of course be liable to recaption) was meant by the speaker, and in

that aspect the matter ought to have been referred to the jury. But aside from that view, it is not the mere fear of punishment which afflicts an innocent man, falsely and maliciously accused of a crime.   Indeed, in this country, there is little if any danger that a man can be convicted of a crime of which he is innocent.   It is the fear of disgrace and infamy; such disgrace as shuts him out from society, and brings a leaden sky over him and his family. Can it make any difference to such a man that his answer not only affirms the guilt of the act, but also the infamy of the punishment as already endured ?   Shall he not be allowed the poor privilege of coming into court, and manifesting to the world that he is innocent.   The law has been differently ruled.   In Fowler v. Dowdney, 2 Moody & Robeson, 119, Lord Denman ruled these words actionable, " he is a returned convict," as importing that the punishment had been suffered, but the infamy remained.   So in the case of Beavor v. Hides, 2 Wilson, 300, these words were held actionable, " he was put into the round house for stealing ducks at Crowland." The court, after mature deliberation, refused to arrest the judgment, Lord Camden observing that the words clearly imported that the defendant had been guilty of a crime, and if the facts were true, the defendants might and ought to have justified.   In Westfall v. Van Ankin, 14 Johns. Rep. 233, the court say, " but the right of the plaintiff to sustain the action does not depend upon the question, whether he was liable to be prosecuted and punished for the crime charged against him, as when the statute of limitations has run against the prosecution, it is still slander to charge the party with an offence; and the party, if the words are true, may give the truth in evidence, although from time a criminal prosecution would be barred."

The words in the present case did, however, import or create the danger of a legal disability.   A person convicted and sentenced to the penitentiary for an infamous crime, is rendered incompetent as a witness, unless he is pardoned.

But it was contended, that without the aid of a colloquium the words as laid do not impute a crime.   But they are direct as the course of a rifle bullet.   They are aimed point blank at the plaintiff.   The office of a colloquium is, when the charge is ambiguous and indirect, or insinuated, and can be made certain only by extrinsic facts and circumstances, to connect these facts and circumstances with the person charged, or the crime insinuated, so as to render either or both certain.   But here the averment is, that the defendant published and spoke the following words of, and concern-

ing the plaintiff, to wit: "he, &c.," (meaning the plaintiff.) The charge is distinct and direct, and needs no aid from a colloquium to identify the person of whom it was affirmed. The abstract of the *narr.* on the paper-book does not set out the *innuendo*, which I have stated, to wit, "thereby meaning and intending that the said George W. had been convicted of an infamous crime." But I have examined the record, and it is found in the declaration. This sufficiently explains the meaning of the words without extending them beyond their fair and necessary import. For all persons in civilized and Christian countries understand, that a convict who is sent to the penitentiary has been guilty of a crime odious and disgraceful in the eye of the law.

The law is settled, that the defendant may give reports of the identical thing charged, in mitigation of damages, and this answers the first bill of exceptions.

We are of opinion that the court erred in their instruction to the jury, on both the points submitted by the counsel for the defendant.

Judgment reversed, and a *venire de novo* awarded.