66      141
33 SC ⁹426

# Klumph *versus* Dunn.

1. In slander it is not necessary that *all* the words laid in the declaration should be actionable, it is sufficient if some are.

2. All words spoken at the time may be laid and given in evidence as showing the *animus*.

3. Where words impute that a common-law offence had been committed in another state, it need not be affirmatively proved that the offence was indictable there.

4. The presumption is that the common-law of a sister state is similar to our own.

5. That words should impute an offence for which there would be liability to prosecution or punishment, is not the criterion of their actionable character.

6. To render words actionable *per se* they must impute an offence of moral turpitude punishable criminally.

7. The law as to the offence in the country in which the words are spoken is to determine their character.

8. Words spoken in Pennsylvania charged the commission of adultery in Georgia. *Held*, that they were actionable *per se*.

9. The position in life and the family of a plaintiff in slander are important circumstances as bearing on the question of damages and are admissible; they need not be laid in the declaration.

October 17th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Klumph *v.* Dunn.]

Error to the Court of Common Pleas of *Crawford county :* No. 144, to October and November Term 1868.

This was an action of slander brought June 28th 1865 by James L. Dunn against Lester R. Klumph.

The declaration was :—

" That whereas, he, the said James L. Dunn (a practising physician and married man), is a good, true, faithful and honest citizen of Pennsylvania, and from the time of his nativity hitherto hath been held, esteemed and reputed of good name, &c., and from drunkenness, adultery and all other acts of a degrading character free, &c. Nevertheless the aforesaid Lester R. Klumph, not being ignorant of the premises, but maliciously intending the said James L. Dunn of his good name, &c., to deprive, and also the said James L. Dunn unto danger of the laws against such offences made, to bring, on or about the —— day of June 1865, at the county aforesaid, these false, feigned and scandalous words following of and concerning said James L. Dunn, in presence and hearing of divers citizens of said Commonwealth, maliciously, falsely and unjustly did say, speak and publish, to wit : ' That Dr. Dunn is ——————————. He lay drunk all the time he was in the army; had a negro wench for his waiter and slept with her every night (meaning thereby that he committed adultery with said negro wench), and had one of his own towns-men put in the guard-house for speaking to her. This he could prove.' "

The case was tried January 3d 1868 before Johnson, P. J. The plaintiff gave evidence, by a number of witnesses, that in June 1866, at a store, in the presence of a number of bystanders, the plaintiff not being present, the defendant used the words laid in the declaration, accompanied with other gross and profane expressions; also that the plaintiff had been a surgeon in the army, and continued so during all the war of the rebellion. F. A. Temple, a witness for plaintiff, on cross-examination said that he " took it for granted that the conversation was about Sherman's march to the sea-coast." The plaintiff gave evidence also that he had lived in Conneautville ten years; had four children, of whom three were daughters; he was a physician.

The defendant gave evidence that in his declarations he had said that the conduct of the defendant of which he spoke was " while he was with Sherman at Atlanta." He gave evidence also that the words were spoken in an excited altercation which he had had with Temple, one of plaintiff's witnesses, in which Temple mentioned the plaintiff as authority to establish something which witness had stated, and that defendant said that he had been told what he stated by a soldier.

The defendant's points and the judge's answers were :—

[Klumph v. Dunn.]

" 1. All the words laid in the *narr.* are not actionable.

" 2. If they were spoken of the plaintiff with reference to his acts while in the South, or outside of Pennsylvania, it must be shown that they were there criminal, and in violation of law, and unless so shown, the plaintiff cannot recover."

" Answers : 1. We have no hesitation in saying that the words are actionable.

" 2. That if the evidence had shown that the crime alluded to had been charged to have been committed in a particular place, and it had been proven that the alleged offence was not a crime indictable as such at that place, we think the charge would not, *per se,* be actionable here where uttered; but this question does not legitimately arise, because no venue is given, either in the *narr.* or in the evidence, to the crime imputed."

The judge said in his charge:—

* * * "This declaration does not allege the plaintiff's professional character as inducement, nor charge that the damage resulted to it. It merely recites, in parenthesis, that the plaintiff was a practising physician and a married man; and it is proper these facts, as well as any others that relate to his character and standing in community, should be taken into consideration by the jury. It is his character as a man that is assailed, and in that capacity he has brought suit."

The verdict was for the plaintiff for $700.

The defendant took a writ of error, and assigned for error the answers to his points and that part of the charge given above.

*J. B. Brawley* and *Derrickson,* for plaintiff in error.—Words are actionable *per se* only when they impute an indictable offence: Lukehart *v.* Byerly, 3 P. F. Smith 418. When words not actionable are laid in the same count as those actionable, it is the same as where there is a general judgment and some of the counts are faulty: Ruth *v.* Kutz, 1 Watts 489; Stitzell *v.* Reynolds, 9 P. F. Smith 489; Gosling *v.* Morgan, 8 Casey 273. The plaintiff should have shown that the offence was criminal in the place in which it was asserted to have been committed: Barclay *v.* Thompson, 2 Penna. R. 148. Adultery is not indictable at common law: Buys *v.* Gillespie, 2 Johns. R. 114.

*S. N. Pettis* (with whom were *M. P. Davis* and *H. L. Richmond*), for defendant in error, cited 2 Whart. Crim. Law, §§ 2400. 2648. Words to be actionable need not charge an indictable offence: Beck *v.* Stitzel, 9 Harris 522.

The opinion of the court was delivered, January 3d 1871, by SHARSWOOD, J.—It is not necessary that all the words laid in

the declaration should be actionable. It is sufficient if some of them are. The court below, therefore, were not required either to affirm or deny the defendant's first point as presented: "that all the words charged were not actionable." They answered correctly that the words laid were actionable without saying whether all were. It is true that a general judgment in slander, where some of the counts set out words which are not actionable, is erroneous; but *non sequitur* that a count in which non-actionable words are laid with those which are actionable is therefore bad. All the words spoken at the time may properly be stated and given in evidence; for they explain and show the *animus* of the principal charge.

The court below may have erred in their answer to the defendant's second point, in saying that the question whether the words would be actionable if the offence was charged to have been committed in another state without showing that it would be criminal there, did not arise, because no venue was given either in the *narr.* or in the evidence to the crime imputed: and also in the charge that the evidence did not show where the offence was stated to have been committed. These form the second and third errors assigned. It must be conceded that there was evidence from which the jury might legitimately have inferred that the conversation to which the defendant's witnesses had testified was the same conversation as that referred to by the plaintiff's witnesses, and that taking the whole together the defendant meant to confine his accusation to what had occurred in the South while the plaintiff was with Sherman at Atlanta, or from Atlanta to Savannah. Even Temple, the witness of the plaintiff, testified on his cross-examination that he took it for granted that the conversation was about Sherman's march to the sea-coast. If this was a material question in the cause it was for the jury to decide, and it was error in the court to withhold it from them. But if it was immaterial it did the defendant no injury. The court, as often happens, gave a wrong reason for a right decision.

The case of Barclay *v.* Thompson, 2 Penna. R. 148, decides that an action will not lie for words spoken in another state when the offence charged is not indictable in that state, although it may be indictable here. To the same effect are Stout *v.* Wood, 1 Blackford 71; Offut *v.* Earlywine, 4 Id. 460; Linville *v.* Earlywine, Id. 469; Langdon *v.* Young, 33 Vt. 136. The reason is a very plain one. The defendant committed no legal wrong where the words were spoken. No action lay there, and therefore not in any other state in which the defendant might afterwards be found and sued. In this case, however, the words were spoken in this state. It has often been held that where the words impute a common-law offence to have been committed in another state it

[Klumph *v.* Dunn.]

need not be affirmatively proved that such offence is indictable there. The presumption is, that the common law of a sister state is similar to our own, and in one case it is intimated, though not decided, that if the offence charged derives its quality as a crime from the statute alone, the rule would be otherwise: Johnson *v.* Dickens, 25 Miss. 580; Van Ankin *v.* Westfall, 14 Johns. 233; Poe *v.* Green, 3 Sneed 664; Montgomery *v.* Dealey, 3 Wisc. 709. But after a careful search, I find no case which directly holds that words charging an offence of moral turpitude, and indictable by the statute law of the country where they are uttered, are not actionable *per se*, because they state the offence to have been committed in another country. The opinions in some of the cases cited seem to rely upon the liability of the defendant to extradition under the Constitution of the United States, or treaties with foreign states. But that surely is not the true *ratio decidendi*. Nothing seems to be better settled than that liability to prosecution or punishment is not the criterion. Both ancient and modern cases agree in this.

In Carpenter *v.* Tarrant, Ridg. temp. Hardw. 339, the words were: " Robert Carpenter was in Winchester gaol and tried for his life and would have been hanged had it not been for Leggat, for breaking open the granary of Farmer A. and stealing his bacon." Here the words necessarily imported that the plaintiff had been tried and acquitted, and therefore could never be convicted of the same offence. In Gainford *v.* Tuke, Cro. Jac. 536, the words were: " Thou wast in Launceston gaol for coining." The plaintiff replied: " If I was there, I answered it well." " Yea," said the defendant, " you were burnt in the hand for it." Here the words clearly meant that the plaintiff had been tried, convicted, pleaded his clergy and been burnt in the hand, and of course could not be again punished for the same offence. So in Baston *v.* Tatham, Cro. Jac. 622, it was held to be no defence to prove that the offence charged was within the terms of a general pardon, for the court remarked that although the pardon might discharge of punishment, yet the scandal of the offence remained. It may be said that in these cases there was liability to indictment on the charge, though the plaintiff by pleading could prevent conviction and punishment. It is to be remarked, however, that in all of them the slander carried its antidote with it as far as risk of indictment was concerned. They are distinguishable in this respect from that class of decisions where the *corpus delicto* is shown never to have existed; as where the words were " you have killed Bob Waters; you have poisoned him, and I can prove it," and it appeared by the plaintiff's witnesses that at the time when the words were spoken, Bob Waters was alive in a distant part of the country: Eckart *v.* Wilson, 10 S. & R. 44; Deford *v.* Miller, 3 Penna. R. 103; Colbert *v.* Caldwell, 3 Grant 181. There are

16 P. F. Smith—10

[Klumph *v.* Dunn.]

other cases, however, in which there could be no pretence of risk of prosecution. In Fowler *v.* Dowdney, 2 Moo. & R. 119, Lord Denman ruled these words to be actionable: " He is a returned convict," as importing that the punishment had been suffered, but the infamy remained. There was here no charge that the plaintiff had been guilty of any particular offence, so that it could not be said that he ran any risk in consequence of the slander of being subjected to another prosecution. Such was the determination of this court in Smith *v.* Stewart, 5 Barr 372, in which the words were " that man was in the penitentiary of Ohio." Here there was neither liability to punishment nor prosecution growing out of the charge, which was that the plaintiff had committed some crime for which he had already been punished in the penitentiary; yet the words were held to be actionable *per se.*

What then is the, criterion ? Mr. Starkie, after an elaborate review of the cases, comes to the conclusion that as it is necessary to have some clear and certain rule by which the line of demarcation between actionable and non-actionable words can be drawn, none could be adopted more convenient than that which refers the question to the criminal law, and confirms the action to imputations of offences of moral turpitude, punishable in the temporal courts : 1 Starkie on Slander 27.

But to what law are the courts to refer to ascertain whether the offence charged is of this character ? Upon every principle of reason and policy the answer seems to be the law of the country where the words are spoken. That law is the exponent of the moral sense of that community—of the estimation in which they hold offences against the moral law, and words which accuse a man of any crime, condemned and subjected to infamous punishment by that law, expose him in that community to obloquy and contempt. The moral character of the act cannot be affected by the place where it is committed. What matters it to those to whom the words are addressed, or in whose hearing they are spoken, that the crime is charged to have been committed in a state or country where such actions are not subject to punishment ? Even if they are to be presumed to know that the act was not a crime punishable by the law of the country where it was alleged to have been committed, would it any the less injure the moral character and standing of the party charged ? Is it possible that a man living in Pennsylvania can be accused of having committed the crime *inter Christianos non nominandum* upon some uninhabited coast or island where there is no government and no law, or among some barbarous people where such practices may be, as they have been, tolerated ? Is such a plaintiff to be turned out of court unless he can prove some special damage ? This may be an extreme case, but nevertheless it tests the principle. If the criminal code laid its heavy hand upon such

[Klumph *v.* Dunn.]

calumniators, there might be some good reason for requiring special damage to be shown in all actions of slander, but we know that it does not, and unless the lash is placed in the hands of the injured party they must go " unwhipped of justice."

If the evidence of the plaintiff's witnesses was to be believed, the defendant below charged him in a public store, in the presence of many persons, in the grossest terms with open and continued criminal connection with a negro wench, and asserted with an oath that he could prove it.   By the law of Pennsylvania, from 1705 to the present time, adultery has always been an indictable offence, and of its moral turpitude there can be no question.   The plaintiff was a married man—the defendant knew him to be so, and meant to charge him with this offence, and in language which was designed to convey his own sense of its detestable character, especially no doubt in view of the race and color of the party who was alleged to have been a partaker in the crime.   We are of the opinion that the words were actionable *per se*, whether they were limited to the state of Georgia or were general; and that the plaintiff in error has no just ground of complaint with the answer and charge of the court below in this respect.

The 4th error assigned remains to be noticed.   It is true, as decided in Chubb *v.* Gsell, 10 Casey 115, that in an action of slander the plaintiff cannot introduce evidence as to his good character until it has been attacked by the defendant; for until then the law presumes it to be good, and the defendant admits it.   Surely the jury may weigh the fact that the character and standing of the plaintiff is unimpeached in estimating the damages. But the court told the jury that they might also take into consideration that the plaintiff was a practising physician, although the declaration did not allege his professional character as an inducement, nor charge that the damage resulted to it.   The position in life and the family of the plaintiff are always important circumstances as bearing upon the question of damages, and have always been held to be admissible in evidence for that purpose : Beehler *v.* Steever, 2 Whart. 313.   It was not necessary that they should be specially laid as the ground of recovery in the declaration.   Evidence of these particulars was given without objection, and it would have been error to have instructed the jury that they ought to disregard them.

Judgment affirmed.