## THOMPSON DAVIS v. P. G. CAREY.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CHESTER COUNTY.

Argued February 10, 1891—Decided April 6, 1891.
[To be reported.]

1. Upon the question, what words containing the imputation of a crime are actionable per se, the decisions in Pennsylvania are in some apparent confusion, but they are not contradictory. The course of decision is entirely consistent; the confusion arises from what has been said, not from what was decided: Per Mr. Justice CLARK.

2. The true rule is that, in case the charge, if true, would subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable, and it is not necessary that the offence imputed be "infamous," in the technical sense.*

3. To say of a person that he burned his own mill to defraud an insurance company, is actionable per se. The offence imputed involves moral turpitude, is in a popular sense of an infamous character, and by §139, act of March 31, 1860, P. L. 416, is subjected to a disgraceful punishment inflicted in case of the commission of infamous offences.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 48 January Term 1891, Sup. Ct.; court below, No. 56 October Term 1889, C. P.

On October 7, 1889, Thompson Davis brought trespass against Peter G. Carey, for slanderous words spoken, filing a statement of claim averring the ownership by the plaintiff of a certain mill property, insured against loss by fire in certain insurance companies; that on March 13, 1889, the mill and its contents were destroyed by fire; that thereafter, on or about June 1, 1889, and at various other times, the defendant did falsely and maliciously, in the presence of divers persons,

---

*And observe, the slander is in the nature of the offence charged, not in the danger of an indictment and punishment: See Beck v. Stitzel, 21 Pa. 524; Van Ankin v. Westfall, 14 Johns. 233; Smith v. Stewart, 5 Pa. 376; Klumph v. Dunn, 66 Pa. 146.—REP.

·charge the plaintiff with having maliciously and wilfully burn-
ed and set fire to the said mill, with the intention thereby to
defraud and prejudice the said insurance companies, etc., etc.

Certain averments of the statement were as follows:

" The said defendant, on the day and year aforesaid, at the
county aforesaid, in a certain conversation then and there had,
of and concerning said plaintiff and of and concerning the
burning of his mill, in the presence of J. H. Rennard and
Alfred Longaker, did say, as follows : ' It would not be hard
to find out the cause of the fire, (meaning the burning of
Thompson Davis's mill on March 13, 1889,) if we, (meaning
the managers and directors of the said fire insurance company
of Chester county,) were to hunt.' ' Without a doubt he
(meaning Thompson Davis) burned the mill, (meaning Thomp-
son Davis's mill.) · Look where the wind was ! He (meaning
Thompson Davis) could not have picked a better day (mean-
ing thereby that the wind was in a direction opposite to the
dwelling-house of the said Thompson Davis, where he resided,
and that the flames from the burning of said mill could not
have communicated to and burned his house.) '

" The plaintiff further avers that, on or about the same date,
to wit, the first day of June, 1889, the defendant, at the county
aforesaid, in a certain other conversation then and there had,
of and concerning the said plaintiff and of and concerning the
burning of the said mill, in the presence of T. M. Lancaster,
did say as follows : ' If there was as much evidence against a
man for murder, as there is against Thompson Davis (meaning
plaintiff) for burning the mill, he would be hung, (meaning
thereby that the evidence that the said plaintiff burned the
mill was strong and conclusive, and sufficient to convict him
of a misdemeanor on a trial in court.) '"

There was no averment of special damage. The defendant
pleaded, not guilty.

At the trial, on May 19, 1890, the following facts were shown:

The plaintiff was the owner of a grist mill in Schuylkill
township, Chester county, insured with the Mutual Fire Ins.
Co. of Chester county, and also with the Ætna Fire Ins. Co. On
March 13, 1889, it was destroyed by fire. The defendant was
one of the directors of the insurance company first named, and
also its agent at Phœnixville. Thomas M. Lancaster testified

for the plaintiff that in a conversation between the witness and
the defendant, at the latter's office, upon the subject of the
fire at the plaintiff's mill, the defendant said to the witness, "If
I had as much evidence against me for murder, as Thompson
Davis has against him for burning his mill, they would hang
me." Alfred Longaker and J. H. Rennard testified to a con-
versation, at Rennard's mill, between the witnesses and the
defendant. Longaker testified that he was talking with the
defendant about the burning of the Davis mill; that the de-
fendant spoke about what a singular time of the year it was for
a mill to burn, when one man had moved out and another was
moving in, and that there was something very mysterious about
it; that Rennard came in and asked the defendant whether
Davis had got his insurance or not, and the defendant said he
had not, and could not get it without trouble; that Rennard
inquired what the trouble was, and the defendant said there
were two reasons, the origin of the fire and the way it was
insured, and "it would not be very hard to find out the cause
of the fire if we were to look;" that the witness and Rennard
both said they did not believe Davis was that kind of a man,
when the defendant said, "Beyond a doubt he burned the mill
himself. Look where the wind was; he could not have chosen
a better day." Rennard testified that he asked the defendant
whether they had settled with Davis for his insurance, and the
defendant said they had not, and in response to an inquiry
from the witness as to what the trouble was, said that suspicion
rested on Thompson Davis for burning the building; that the
witness said he did not think Thompson was that kind of a
man, and the defendant replied, "Without a doubt, he burned
the mill;" that Longaker said he would have been afraid of
setting the rest of the buildings on fire, and the defendant re-
marked, "From the way the wind was, he could not have
selected a better time."

The defendant, testifying on his own behalf, denied that he
charged the plaintiff with burning the mill, in either of, he
conversations mentioned by the plaintiff's witnesses, and said
that he had no reason for making such a charge. He was cor-
roborated as to the conversation with Lancaster by another
witness.

Opinion of Court below.

At the close of the testimony, the court, HEMPHILL, J., charged the jury as follows:

[This case, as you have already learned from the discussion here, has turned upon a question of law, which is one for the court. Your labors, therefore, will be very brief, merely to render a verdict in favor of the defendant.] [5]

I have been asked to charge you by the defendant:

1. If the jury believe that the defendant charged the plaintiff with burning his own mill, their verdict must be for the defendant, because such a charge is not actionable per se.

Answer: That is affirmed. [1]

2. If the jury believe that the defendant charged the plaintiff with burning his own mill for the purpose of securing payment of the insurance money thereon, such a charge is not actionable per se, and their verdict must be for the defendant; because words spoken of a private person to be actionable must contain a plain imputation, not merely of some indictable offence, but the offence must be of an infamous character, or subject to an infamous and disgraceful punishment.

Answer: That is the question we have just been discussing, and that point is therefore affirmed. [2]

3. The allegations made by the plaintiff in this case, if proven, do not per se render the defendant subject to an action for slander, and the verdict should be for the defendant.

Answer: That is affirmed. [3]

4. Under all the evidence in this case, the verdict should be for the defendant.

Answer: That point is also affirmed. [4]

—The jury returned a verdict for the defendant, as directed.

A rule for a new trial having been argued, the court, HEMPHILL, J., on August 9, 1890, filed the following opinion:

As special damages are not laid, it is well settled in this state that "to render words spoken of a private person actionable, they must impute, not only an indictable offence, but one of an infamous character, or subject to an infamous or disgraceful punishment:" Stitzell v. Reynolds, 67 Pa. 57, and cases there cited.

The offence here alleged is, that defendant charged the plaintiff with setting fire to his own mill, with the intention

Opinion of Court below.

thereby to defraud the insurance companies in which he had it insured. The offence is made, under our penal code, a misdemeanor, and is punishable with fine and imprisonment. It is therefore an indictable offence. Is it "one of an infamous character, or subject to an infamous or disgraceful punishment?" For the offence must not only be indictable, but also infamous.

Infamous, in its general or common use, is defined to be, odious, detestable, held in abhorrence; and in that sense, every crime and misdemeanor, punishable with death or imprisonment, must be held to be infamous. It is evident that in the law, it is not used in this its broadest sense; for it has been held that bribing an elector, and stealing growing corn, are not infamous offences. That it has a legal signification seems clear, from the frequent use of the term, infamous crime, in the text-books, legal decisions, and in our constitutions, both state and federal. What then is an infamous crime, in the legal sense?

The Supreme Court, in Commonwealth v. Shaver, 3 W. & S. 342, says: "The words 'infamous crime' are properly a legal phrase, and are therefore to be taken in their legal sense," which is, the conviction of a person of such an offence as renders him incompetent to be a witness thereafter, and states those offences to be, "treason, felony, and every species of the crimen falsi, such as forgery, perjury, subornation of perjury, attaint of false verdict, and other offences of the like description which involve the charge of falsehood and affect the public administration of justice." Again, the Court in Schuylkill Co. v. Copley, 67 Pa. 390, says: "Infamous crimes are treason, felony, and every species of the crimen falsi, such as forgery, perjury, subornation of perjury, and offences affecting the public administration of justice; such as bribing a witness to absent himself and not to give evidence, and conspiracies to obstruct the administration of justice, or falsely to accuse one of an indictable crime." The offence here charged is not to be found in the above list, which Justice AGNEW says, "is clearly the limitation of the infamous crimes as understood in this state."

It was urged upon the argument, that the crimen falsi included all crimes based on falsehood or fraud, and that this was such a fraud on the insurance companies as brought it within the category. But Justice AGNEW, in the opinion cited, adds:

" There are many offences involving both falsehood and fraud which are punished as infamous crimes are usually punished in this state, and yet are not infamous crimes and will not exclude the offenders as witnesses." An infamous crime may therefore, be briefly defined to be such a crime as at common law, upon conviction, rendered one infamous, or thereafter incompetent to testify.

The case of Chase v. Sherman, 119 Mass. 387, cited by plaintiff, cannot be treated as authority or have any force in this state, as the rule in Massachusetts has always, or at least for many years, been very different from our rule. In 1829, Chief Justice PARKER, in Miller v. Parish, 8 Pick. 384, laid down the rule in Massachusetts to be, that an accusation is actionable " whenever an offence is charged, which, if proved, may subject the party to a punishment, though not ignominious, but which brings disgrace upon the party falsely accused." This rule, it will be seen, is much broader than our own and more consistent with reason and common sense.

In the language of Justice WILLIAMS, in Stitzell v. Reynolds, supra, " It is perhaps to be regretted that the law should make any such distinctions as to the actionable character of the words. There is but little difference in the turpitude of the offence charged, in whichever sense the words may have been spoken (whether they charged the stealing of growing or severed corn), and there is perhaps as little foundation in reason or morals for the distinction which the law makes. But it exists, and cannot be gainsaid. In the one case, the act is theft; in the other, a trespass, or at most a mere misdemeanor."

It is not for us to make, but to declare, the law; and, as the offence here charged does not come within the rule of actionable accusations as declared in this state, we must refuse this motion for a new trial, and dismiss the rule.

Rule dismissed.

—Judgment having been entered, the plaintiff took this appeal, assigning for error:

1–4. The answers to the defendant's points.[1 to 4]

5. The part of the charge embraced in [  ][5]

*Mr. H. H. Gilkyson* (with him *Mr. William M. Hayes*), for the appellant :

The testimony for the plaintiff, if believed, rendered the defendant liable to an action for slander; and the words spoken by him having charged an indictable offence were actionable, without allegation and proof of special damage: Starkie on Slander, *70, *83. The courts of the United States have defined an infamous crime to be one punishable by imprisonment in the penitentiary: Ex parte Wilson, 114 U. S. 417; Mackin v. United States, 117 U. S. 348. Applying this test, the offence with which the plaintiff was charged is an infamous crime : § 139, act of March 31, 1860, P. L. 416. In England and Massachusetts, such a charge as was shown to have been made by the defendant, has been held actionable slander: Starkie on Slander, *100; Sweetapple v. Jesse, 5 B. & Ad. 31; Chase v. Sherman, 119 Mass. 387. In this state, there is a long list of cases, holding words to be actionable per se which are not included in the category laid down in the court below : Miles v. Oldfield, 4 Y. 423; Phillips v. Hœfer, 1 Pa. 62; Andres v. Koppenheafer, 3 S. & R. 255; Walton v. Singleton, 7 S. & R. 449; Todd v. Rough, 10 S. & R. 18; Deford v. Miller, 3 P. & W. 103; Beck v. Stitzel, 21 Pa. 524; Lukehart v. Byerly, 53 Pa. 420. In Stitzell v. Reynolds, 67 Pa. 54, the offence charged was, in the language of the court, "a trespass, or at most a mere misdemeanor." If the law be as declared by the court below, there is something manifestly wrong with it.

*Mr. Archibald M. Holding* (with him *Mr. R. E. Monaghan*), for the appellee :

1. In order to render the imputation of an offence slanderous per se, the offence imputed must be (*a*) indictable, and (*b*) of an infamous character, or subject to an infamous punishment. The defendant, according to the evidence, did not charge the plaintiff with an indictable offence; he merely charged him with burning his own mill, and not with burning it with the intention thereby to defraud the insurance company. The words, therefore, were not actionable per se. But even if the proof had sustained the plaintiff's allegations, the action could not be maintained. That the offence must be of an infamous character or subject to an infamous punishment, is a rule which this court has laid down : Gosling v. Morgan, 32 Pa. 275; Dottarer v. Bushey, 16 Pa. 208; Stitzell v. Rey-

nolds, 67 Pa. 57. "Infamous," is used in this state, not in its common acceptation, but in its legal sense: Commonwealth v. Shaver, 3 W. & S. 342. The fact that an offence is punishable by imprisonment in the penitentiary, does not necessarily make it infamous in law: Anderson's Law D., 540; Commonwealth v. Shaver, 3 W. & S. 342; Stitzell v. Reynolds, 67 Pa. 57.

2. Treason, felony, and every species of the crimen falsi are clearly the limitation of infamous crimes as understood in this state: Schuylkill Co. v. Copley, 67 Pa. 390; Commonwealth v. Shaver, 3 W. & S. 342. The burning of one's own mill with intent to defraud an insurance company, was not indictable at common law. It was made a misdemeanor in 1860, just as stealing standing corn was, and is punishable in the same way. But neither offence can by any argument be included among crimes of an infamous character; an imputation of the latter is not actionable per se: Stitzell v. Reynolds, 67 Pa. 57, and neither can an imputation of the former be so. In the Pennsylvania cases cited by the appellant, the questions which arise in this case were neither argued nor considered. The decisions of the United States courts cited, apply the term, infamous, in its common and not its legal sense; and the Massachusetts authorities do not help us, as the rule in that state, as to the infamous character of an offence, is much broader than the rule laid down in this state: Miller v. Parish, 8 Pick. 384; Jones v. Robbins, 8 Gray 348.

OPINION, MR. JUSTICE CLARK:

The plaintiff, Thompson Davis, was the owner of a three-story stone merchant grist mill, situate in Schuylkill township, Chester county. The mill was insured in the Mutual Fire Insurance Company of Chester county in the sum of $2,500, and in the Ætna Fire Insurance Company in the sum of $5,000. Whilst thus insured, on March 13, 1889, the mill was destroyed by fire. The defendant, Peter G. Carey, is the agent of the first-named company, and is one of the managers and adjusters thereof.

In the plaintiff's statement of claim it is charged that about the first day of June, 1889, and at various other times, the defendant charged the plaintiff with setting fire to and burning

the mill, to defraud the insurance companies.   If the words uttered were actionable in themselves, without proof of special damage, the testimony was abundant to send the case to the jury.   The charge was that he had burned the mill himself; that he could not have chosen a better day; that it was beyond doubt he had burned the mill; and, taking these expressions in the connection in which they were made, they were open to the implication that he had burned the mill to defraud the insurance companies.   The court having given peremptory instructions to find for the defendant, the truth of the testimony adduced by the plaintiff, with all reasonable inferences therefrom, must be assumed.   But the learned judge of the court below was of opinion they were not actionable, and upon that ground gave peremptory instructions to find for the defendant.

Upon the question what words containing the imputation of a crime are actionable, without proof of special damages, the cases in this court are in some apparent confusion.   They are not contradictory.   The course of decision is entirely consistent; the confusion arises from what has been said, not what was decided.   The cases are in accord that such words are not actionable unless they import an offence indictable and punishable, either at the common law or by statute : Harvey v. Boies, 1 P. & W. 12; Lukehart v. Byerly, 53 Pa. 418; but this is not the criterion : Klumph v. Dunn, 66 Pa. 141.

In Miles v. Oldfield, 4 Y. 423, the words were, " You are a vagrant."   It was objected that these words were not actionable, but this Court said : " The act of 21st February, 1767, defines the nature of vagrancy, and authorizes a justice of the peace to commit vagrants to the common jail, there to be kept at hard labor for any time not exceeding one month.   To charge a person with an offence which subjects him to punishment of this kind is, in the opinion of the Court, actionable."   This case may, however, be distinguished from others in this, that it was not only averred in the declaration, but it was proved, in the nature of a special injury, that in consequence of the words spoken the plaintiff was apprehended and taken before a justice of the peace as an idle and disorderly person, and thereby suffered damage.   In Shaffer v. Kintzer, 1 Binn. 542, Chief Justice TILGHMAN says : " With regard to words which will support an action of slander, I take the rule to be

Opinion of the Court.

as laid down by C. J. De Grey, in the case of Onslow v. Horne, 3 Wils. 186, in the year 1771, which is an authority in this court. They must contain an express imputation of ' some crime liable to punishment, some capital offence, or other infamous crime or misdemeanor.' " But in Brown v. Lamberton, 2 Binn. 34, the crime charged was adultery, and in Walton v. Singleton, 7 S. & R. 449, it was fornication merely. No special damage was laid in either case, and it was held that the words were actionable. To the same effect are Beirer v. Bushfield, 1 W. 23; Vanderlip v. Roe, 23 Pa. 82; Klumph v. Dunn, 66 Pa. 141, and Rhoads v. Anderson, 12 Cent. R. 727, 13 Atl. Rep. 823. To call a woman a whore or an adulteress is actionable; the punishment is not infamous, but it is actionable, because it is a charge of impurity, depravity, and moral turpitude.

In Andres v. Koppenheafer, 3 S. & R. 254, the slanderous words spoken charged the publication of a libel, an indictable offence at the common law, now punishable with fine and imprisonment. Chief Justice Tilghman, delivering the opinion of this court, said : " But, supposing the words to imply an indictable offence, it is contended that still they are not actionable, because there is nothing infamous in the crime of libel. It is laid down by some elementary authors that all words are actionable which import an offence for which one is indictable and punishable by fine and imprisonment. I incline to think that this is carrying the matter rather too far. To say that a man has committed an assault and battery, is charging him with an offence punishable by fine and imprisonment, but yet no action of slander has been sustained for such words. It seems that there should be something in the offence of an infamous or disgraceful nature ; either a felony or a misdemeanor which affects one's reputation." Mr. Justice Gibson, in the same case, said : " In England the law is broadly laid down that words charging an offence that would subject the party to punishment by indictment are actionable in themselves. In Brooker v. Coffin, 5 Johns. 188, the rule is restrained to a charge that would, if true, subject the party to an indictment for a crime involving moral turpitude, or that would draw after it an infamous punishment. This distinction appears to me a sound one, and to be founded in reason and good sense. There

Opinion of the Court.

is a variety of misdemeanors, to the commission of which not even the shadow of disgrace is attached by the world, and to be accused of which would not be likely to induce the vexation of a prosecution, if the accused were innocent, and, if guilty, he ought not to complain. I think it unreasonable that a charge of having committed a nuisance, assault and battery, and the like should be held actionable." We have quoted extensively from this case of Andres v. Koppenheafer because it seems to be the leading case in Pennsylvania, and contains an exposition of the law which has been followed in the later cases.

In Todd v. Rough, 10 S. & R. 18, it was held to be actionable, in a conversation concerning certain boundary trees and allowed landmarks, to say of the plaintiff that he moved the line and made a new line; for, said this court, in a conviction of this offence, "not only would the plaintiff be subject to pecuniary loss, but to loss of character. The removal of boundaries has always been held in execration: the curse of God was denounced against it by the Mosaic law; the Romans considered it an infamous offence, and all civilized nations have been of the same opinion. The reason of this general detestation is evident; without certainty of boundary, there is no certainty of property in land." In Beck v. Stitzel, 21 Pa. 524, the plaintiff was or had been one of the administrators of Adam Stitzel, deceased, but had settled his final account some sixteen years before the words complained of were spoken. The defendant charged that the plaintiff, when administrator, "had a room in which were two beds, and both beds were full of leather which he had smuggled away at the time of the appraisement." No special damage was averred in the narr, and none was proved; it was held the words were actionable. In the opinion, this Court said: " Where the charge is of an offence, it is usually said that it must involve moral turpitude and danger of punishment. This element of moral turpitude is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community. The other element, danger of punishment, is not a necessary one; for it is said in Van Ankin v. Westfall, 14 Johns. 233, and repeated here in Smith v. Stewart, 5 Pa. 376, that words are ac-

tionable, even though they charge an offence barred by the statute of limitations, and it has often been decided that words are actionable though they charge that the punishment has already been inflicted: Smith v. Stewart, 5 Pa. 376; Beavor v. Hides, 2 Wils. 300; Fowler v. Dowdney, 2 Moody & R. 119; Gainford v. Tuke, Cro. Jac. 536."

From this reference to a few of the cases, it is clear that when Mr. Justice CHURCH, in Gosling v. Morgan, 32 Pa. 273, said that the undisturbed authority of the leading cases of Shaffer v. Kintzer, 1 Binn. 537; McClurg v. Ross, 5 Binn. 218; and Andres v. Koppenheafer, 3 S. & R. 255, establishes the principle, that words spoken of a private person are only actionable when they contain a plain imputation, not merely of some indictable offence, but one of an infamous character or subject to an infamous and disgraceful punishment, the word "infamous" could not have been used in its technical, but rather in its popular sense. The only crimes which work infamy and consequent incompetency as a witness, are treason, felony, and every species of the crimen falsi, such as forgery, perjury, subornation of perjury, attaint of false verdict, and other offences of like description, which involve the charge of falsehood and affect the public administration of justice: Commonwealth v. Shaver, 3 W. & S. 342; Schuylkill Co. v. Copley, 67 Pa. 390. The profession would certainly be greatly surprised to learn that slanderous words are, in Pennsylvania, actionable only when they impute a crime of this class. Our books are full of cases to the contrary.

In Klumph v. Dunn, 66 Pa. 146, it was held that words imputing the commission of the crime of adultery, in another state, are actionable here. "By the laws of Pennsylvania," says Mr. Justice SHARSWOOD, "from 1705 to the present time, adultery has always been an indictable offence, and of its moral turpitude there can be no question. The plaintiff was a married man. The defendant knew him to be so, and meant to charge him with this offence and in language which was designed to convey his own sense of its detestable character, especially, no doubt, in view of the race and color of the party who was alleged to have been a partaker in the crime. We are of opinion that the words were actionable per se, whether they were limited to the state of Georgia or were general. . . . . What, then, is the criterion? Mr. Starkie, after an elaborate review of the cases,

Opinion of the Court.

comes to the conclusion that, as it is necessary to have some clear and certain rule by which the line of demarkation between actionable and non-actionable words can be drawn, none could be adopted more convenient than that which refers the question to the criminal law, and confines the action to imputations of moral turpitude, punishable in the temporal courts : 1 Starkie on Sland. & L., 27."

The English rule is that spoken words, which impute that the plaintiff has been guilty of a crime punishable with imprisonment, are actionable, without proof of special damages : Odger on Sland. & L., 54, and cases there cited. But, in the American cases, importance is attached to the inherent nature of the indictable act, and also to the punishment which the law assigns to it, upon the principle that social degradation may result from either. Brooker v. Coffin, 5 Johns. 190, is the leading case in this country. The rule there laid down is known as the American rule, and is as follows : "In case the charge, if true, will subject the party charged to an indictment for a crime, involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable." " This test," says Mr. Newell in his very recent treatise on Defamation, Libel, and Slander, page 97, " has been accepted and applied so often and so generally that it may now be accepted as settled law." Brooker v. Coffin was referred to in Andres v. Koppenheafer, with approval, and is spoken of as founded in reason and good sense. The cases in Pennsylvania are in accord with it, and we regard it as stating the true rule.

The plaintiff in this case was charged with burning his own mill, to defraud the insurance companies. The offence involves moral turpitude ; it is of a base, and in a popular sense infamous character. It is punishable by separate and solitary confinement at labor in the penitentiary, for a period not exceeding seven years, which is a disgraceful punishment, inflicted on infamous offences. The words alleged to have been spoken were therefore, without doubt, actionable per se, and upon this ground

The judgment is reversed, and a venire facias de novo awarded.