## Hays *against* Brierly.

In an action on the case for a libel, it is the province of the jury and not of the court to construe words of dubious import; and they are to be interpreted, not by the *norma loquendi*, but by the sense in which they were actually uttered.

If the libel use a name different from that of the person intended to be libelled, he may be designated in the declaration by an innuendo, which performs the office of an averment determinable by the jury.

ERROR to the district court of *Alleghany* county.

This was an action for a libel by Thomas Brierly against David Hays, in which the plaintiff's declaration, after stating the good character of the plaintiff, thus proceeds: " yet the said defendant well knowing the premises, but greatly envying," &c., "and contriving," &c., " on the 10th day of January 1834, at the county aforesaid, falsely, wickedly and maliciously did write, compose and publish, and did cause, &c., of and concerning the said plaintiff, in the form of a letter, a certain false, scandalous, malicious and defamatory libel, containing, amongst other things, the false, scandalous, malicious and libellous matter following, of and concerning the said plaintiff; that is to say, we [meaning the said defendant] new [knew] what Brilery [meaning the said plaintiff] dun [done] with Judy M'Clure's hound slut in their sugar camp, when she was a dogen, [thereby then and there meaning that the said plaintiff was guilty of and had committed with the hound slut aforesaid at the sugar camp aforesaid, the horrible and detestable crime of buggery, *illud peccatum horribile non nominandum inter Christianos*, to wit, at the county aforesaid]. By means of the commission," &c. with the common conclusion.

The cause was referred to arbitrators, who made a report in favour of the plaintiff for 500 dollars damages; from which there was no appeal.

Errors assigned.

1. There is no sufficient cause of action set forth in the plaintiff's declaration.

2. There is nothing in the declaration which shows that Brilery named in the paper declared upon, means Thomas Brierly, the plaintiff.

*Lowrie* and *Forward*, for plaintiff in error, cited, 4 *Co. Litt.* 17; *Cro. Jac.* 635; *Cro. Eliz.* 416; Cheetham *v.* Tillotson, 5 *Johns.* 438; Maxwell *v.* Allison, 11 *Serg. & Rawle* 344; 11 *Johns.* 61; 6 *Conn. Rep.* 407; Fowle *v.* Robbins, 12 *Mass. Rep.* 500; 4 *M'Cord* 322; 2 *Salk.* 513; 12 *Mod.* 140.

[Hays v. Brierly.]

*M'Candless* and *Fetterman, contra,* cited, 4 *Wend.* 324; *Cowp.* 672; *Stark.* 293; 5 *East* 463; *Cowp.* 275; 2 *Wils.* 114; Bornman *v.* Boyer, 3 *Binn.* 517; Van Vechten *v.* Hopkins, 5 *Johns.* 211; Andreas *v.* Koppenheafer, 3 *Serg. & Rawle* 255; 3 *Cowen* 231; Brown *v.* Lamberton, 2 *Binn.* 34; Rue *v.* Mitchell, 2 *Dall.* 58; Thompson *v.* Lusk, 2 *Watts* 17; M'Kennon *v.* Greer, 2 *Watts* 352.

The opinion of the Court was delivered by

GIBSON, C. J.—Much that might be said here in favour of bringing declarations in slander nearer to convenience and the ordinary comprehension of the profession, was said in Thompson *v.* Lusk, and need not be repeated. The pleadings in this action were moulded in subservience to the principle of *mitior sensus,* at a time when vexatious actions for words were so rife that the judges thought themselves bound by policy to discourage them; and the plaintiff was required not only to prove but to state his cause of action with the precision required in an indictment of murder. The doctrine of *mitior sensus,* has, however, fallen into merited disuse; and the strictness of pleading, which it introduced, is beginning to give way before the principle that it is the province of the jury, and not of the court, to construe words of dubious import, and that these are to be interpreted not by the *norma loquendi,* but by the sense in which they were actually uttered. There are symptoms of this relaxation every where, but particularly in Pennsylvania, where the innuendo is beginning to perform the office of an averment determinable by the jury. "Where words will bear several meanings," said Chief Justice Tilghman, in Bornman *v.* Boyer, "the plaintiff has a right to *aver,* by innuendo, the meaning in which he conceives they were spoken, and it is for the *jury* to decide whether he is right." Nor is this a notion peculiar to Pennsylvania. The doctrine was maintained so early as Oldham *v.* Peake, 2 *Bl. Rep.* 961, and it has been followed in later English cases, as well as in Dexter *v.* Taber, 12 *Johns.* 260, and Goodrich *v.* Woolcott, 3 *Cowen* 231. "It is the province of the jury," says Mr Starkie, "where such doubts arise, to decide whether the words were used maliciously, and with a view to defame, such being matter of fact to be collected from all the circumstances; and for the court to determine whether such words, taken in the malicious sense imputed to them, can alone or by aid of the circumstances stated upon the record, form the legal basis of an action." *Law of Slander* 44. And again, "an innuendo may be defined to be an *averment* which explains the defendant's meaning by reference to antecedent matter." *Ibid.* 293. Still the jury are to judge of the fact whether the defendant uttered the words in reference to the antecedent matter; and the reason why even new matter may not be introduced by it is, that such new matter might be compounded of law and fact, and draw the decision of the whole to the jury. Thus the words "you are forsworn," without reference to a judicial oath antecedently introduced by a *colloquium,* will not

IV.—2 z

[Hays v. Brierly.]

be an imputation of perjury, because, as it is said, the jury would have
to decide on evidence whether the forswearing did in law amount to
perjury, and the question would not be open to the court on the record.
*Ibid.* 294. Though I have no great objection to this, the reason for
it must be admitted to be purely theoretic, for we find no great prac-
tical mischief or difficulty in submitting mixed questions to the jury,
under the direction of the court as to the law. But there is no
ostensible reason for it whatever, where the allegation is of an un-
mixed matter of fact, as it is where its office is to individuate the
person slandered. But putting this ground out of view, for we do
not rule the cause on it, has not the time arrived when we may say,
without too wide a departure from the strictness of ancient forms,
that the words " of and concerning," contain an averment of indivi-
dual imputation sufficiently specific, except perhaps in very special
cases? In Bornman *v.* Boyer, there was no other averment than
this general one, that the words " Bornman must have taken it"
were pointed at the plaintiff; and though an objection was not
raised or decided on that ground, yet if the meaning of the defend-
ant in respect to the *nature* of the offence charged were deemed to
be sufficiently indicated by the innuendo, it cannot be a matter of
much doubt whether the *person* charged would not have been
deemed equally indicated by the general introductory averment. It
is conceded that these words " of and concerning" are sufficiently
specific where the charge has been made against the plaintiff ex-
pressly by name.; a special averment being thought indispensable
only as a substitute for the name, which, by reference to circum-
stances, makes the individuality of the person charged equally clear.
But in Bornman's case, only the surname, which is but a part of the
name, was expressed ; and there may have been many of the vicin-
age cognominal with him. There was very nearly, if not altogether,
as much necessity for further designation in that case, as there
would have been had the words been laid as spoken of John Smith,
in regard to which no averment more specific than is contained in
the words " of and concerning" would have been required, though
the generality of the name, which is the appellative of thousands,
would have cast on the jury the business of asertaining what John
Smith was meant ; and this too, without recurring to circumstances
antecedently introduced. The presence or absence of the baptismal
name concerns but the greater or less degree of certainty ; and why
should it determine the necessity of further designation by reference
to circumstances antecedently stated, when the jury must, after all,
ascertain the person meant, whether his true name be given at the
uttering of the words, or, as in the case at bar, a fictitious one in
striking consonance with it. It does not appear that the plaintiff
had been named in the letter, or that there was any thing to lay
hold on by reference ; and it is of no little weight that counsel have
been unable to suggest, though pressed to do so, how it could be
more specifically averred that the word, Brilery meant Brierly the

[Hays v. Brierly.]

plaintiff, than it is by the allegation that the words which relate to it were uttered of and concerning him.   If therefore the plaintiff cannot recover in this form of action, he cannot recover at all ; and if a slight change in the name, purposely made, as this evidently was, were to shield a slanderer from legal animadversion, every man, however clumsy his invention, might securely libel his neighbour at pleasure.   The consequence would be, that the land would be filled with violence and blood.   The reason for requiring an averment of extrinsic matter seems to rest on the principle, that the plaintiff is not permitted to inquire into the meaning of the paper by the naked impression of witnesses, because the jurors are as competent to judge of the impression it makes as witnesses can be.   Vanvechten *v.* Hopkins, 5 *Johns.* 225.   The fallacy to which this leads is in assuming that there can be no intrinsic evidence of designation where the name is omitted.   But it is evident that there are cases in which, though the name is purposely mutilated or changed, the meaning yet flashes as vividly on the apprehension as if every letter of it had been regularly inserted.   A slight change, with the use of significant adjuncts, may point a slander at an individual with peculiar piquancy.   I once knew a gentleman named John Anderson, grossly libelled in a song by the appellation "John Henderson my Jo;" than which no special averment could disclose the meaning more clearly.   And in Fleetwood *v.* Curl, *Cro. Jac.* 557, where the plaintiff was *receiver* of the court of wards, the words "Mr *Deceiver* hath deceived the king," were held actionable; and undoubtedly no other evidence of the individuality of the party meant could have been produced than the evident play on the name of his office.   In such a case it would doubtless be absurd to call witnesses; but it follows not that the jury might not be left to judge on the intrinsic evidence of the paper, and there would therefore seem to be no reason why the common averment and innuendo should not be of as much avail as if the true name had been actually given.   There certainly have been many decisions to the contrary in the days of Rolle and of Croke ; but, "at this day," says Mr Starkie, "after so many of the technical niceties with which actions of this description were formerly incumbered, have been defeated, it may well be doubted whether much attention would be paid to these cases." *Law of Slander* 287.   What is matter of doubt on such a subject there, ought long since to have ripened into certainty here.   The residue of the paragraph is so replete with good sense, that I am induced to extract it.   " The real end and object of such averments, is to show with certainty that the plaintiff is the person aimed at ; and though upon the face of the words themselves their application may be ambiguous, as where the defendant says, thy son or thy brother, yet there appears no want of certainty on the record, when it is alleged that the words were spoken *of the plaintiff*; and whether they were so applied or not, is a matter of evidence to be proved by showing that he did stand in the relation specified, and without due

proof of which the jury could not possibly find the truth of the aver-ment, that the words were spoken of him." In consideration of the many decisions on the subject, however, he advises that it would not be prudent to omit a special averment. But in a case like the pre-sent, where there may be no extrinsic circumstances of reference, and where the intrinsic evidence is all-sufficient, the want of it is certainly not fatal.

Judgment affirmed.