# CASES

IN

# THE SUPERIOR COURT

OF

# PENNSYLVANIA

## Garvin v. Mercur, Appellant.

*Slander—Charge of forgery—Charge—Damages.*

In an action for slander where the plaintiff claims that the defendant charged him with the crime of forgery in a political speech, the question is not whether the name of the plaintiff was used in the particular sentence in which the charge of forgery was made, but did the circumstances and the connection in which it was made indicate to those who heard it that the plaintiff was the guilty party.

A charge that a man, meaning the plaintiff, "signed a contract agreeing to pay one hundred dollars for posting" certain fake political posters, and that the man who signed the contract "forged the name" of another person, imports that the person so charged was guilty of the crime of forgery.

In an action for slander where the alleged slanderous words charge an indictable offense, it is for the court to decide whether the words set forth in the plaintiff's statement are capable of the meaning ascribed to them by the innuendo, and for the jury to decide whether such meaning is properly ascribed to them. It is not necessary, however, that the words spoken charging a crime should contain all the averments necessary to sustain an indictment for that crime, in order to make the words actionable, per se.

In an action for slander where the defendant admits that he spoke the words of which the plaintiff complained, he will not be permitted to testify to the meaning of the words. The meaning of the words is for the jury, to be ascertained in light of all the circumstances.

In an action for slander a defendant who has had a verdict against him cannot complain that the charge was inadequate as to damages, where it appears that the jury were told that, in case they found for plaintiff, they should find the damages in such amount as would compensate the plaintiff for the wrong against his name, but that they were not to award punitive damages, by way of punishing the defendant.

Argued Nov. 22, 1916. Appeal, No. 326, Oct. T., 1916, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1913, No. 184, on verdict for plaintiff in case of Thomas H. Garvin v. J. Watts Mercur. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART TREXLER and WILLIAMS, JJ. Affirmed.

Trespass for slander. Before JOHNSON, P. J.

The statement of claim charged that the defendant did on the twenty-second day of October last past, at the County of Delaware, in the course of a political speech he was delivering in the Borough of Media in said county, falsely, maliciously, wickedly and illegally speak and publish the following false, scandalous, illegal, defamatory and malicious slander in substance as follows:

"The leaders of the Republican machine in this county are dishonest, and if most of them had their just deserts they would be in State prison to-day. I will name some of them as I go along.

"Tom 'Garvin, chairman of the Republican County Committee. Now, gentlemen, I will tell you something that may be news to you with reference to Mr. Garvin. Last fall, during our campaign a man went to Philadelphia to a......company in Philadelphia and signed a contract agreeing to pay one hundred dollars for posting certain fake Bull Moose and Progressive posters in certain precincts in this county. The man who went and signed that name forged the name of Frank G. Perrin. I don't hesitate to say that Frank G. Perrin might have done this same thing, but he did not. His name was forged. The name of the man who paid the bill, one

1, (1917).] Statement of Facts—Charge of Court below.

hundred dollars cash, signed the name 'S. D. Shuster,' and told them to send the receipt to Media; he would get it at the Media post office. No address. Of course he would get it at the Media post office. At that time he had a friend in Media post office, but thank God that friend is not there to-day. But the man who signed the name, 'S. D. Shuster' was Tom Garvin. He is the man who signed the name 'S. D. Shuster.' There is no S. D. Shuster in Delaware County. He filed no account for that expenditure of one hundred dollars, thereby meaning and intending to charge the plaintiff with having forged the names of Frank G. Perrin and S. D. Shuster, and further meaning the plaintiff should be in State prison. The plaintiff further avers that he is in no wise guilty of the said forgeries by the said false, scandalous and defamatory words so injuriously laid to his charge; that the said charge as aforesaid spoken and published by the said J. Watts Mercur against the plaintiff is false and untrue; that the plaintiff never signed the name of Frank G. Perrin or S. D. Shuster to any paper, nor did the plaintiff pay the money in said charge referred to. The plaintiff further denies any and all knowledge of or connection with the transaction in said charge referred to. If said transaction took place the plaintiff had no connection therewith whatsoever either directly or indirectly. The plaintiff further avers the said charge so as aforesaid spoken and published by the said J. Watts Mercur is a false and malicious slander."

At the trial the court charged as follows:

This is what is known as a suit for slander. Slander is a wrong to another's reputation by spoken words. In other words, it is a wrong to utter words against another that injures his reputation and which is the subject of a law suit, and that law suit is known as a slander suit. The allegation here is that this defendant, Mr. Mercur, during a political campaign, in a public speech, spoke the words set forth in this declaration; and that the al-

legation is that the purport of these words is to charge Mr. Garvin with forgery, to charge him with an offense the punishment of which would confine him to the State prison. And the contention of the plaintiff is that that is the meaning and the true meaning of these words. They have been read to you by counsel for the plaintiff and for the defendant. In the presence of the suggestion of the court as to what slander is, we will read it again. Does this language uttered by the defendant, Mr. Mercur, charge Mr. Garvin with forgery? With an offense which if he had his just deserts he would be in the State prison to-day. If it does, then Mr. Mercur would be liable for whatever damage you shall say the plaintiff has suffered by reason of their utterance. We will read this paper; because, upon its construction will depend your verdict: "The leaders of the Republican machine in this county are dishonest, and if most of them had their just deserts they would be in State prison to-day. I will name some of them as I go along. Tom Garvin, chairman of the Republican County Committee." Now the contention of the plaintiff in this case is that what the court has just read to you is equivalent to saying that Tom Garvin, chairman of the Republican County Committee, is dishonest and if he had his just deserts he would be in the State prison to-day.

"Tom Garvin, chairman of the Republican County Committee—" Now he said: "Now, gentlemen, I will tell you something that may be news to you with reference to Mr. Garvin—" and then recites the circumstances which it is said took place in Philadelphia. Evidently all this relates to Mr. Garvin, because he says: "I will tell you something that it may be news to you with reference to Mr. Garvin." And then he recites this circumstance about signing a paper, and he says: "The man who went and signed that name forged the name of Frank G. Perrin. I don't hesitate to say that Frank G. Perrin might have done this same thing but he did not.

His name was forged." Now the contention of the plaintiff is that is a declaration, first by saying that a man went to Philadelphia, that Perrin's name was forged, that Perrin didn't do it, but his name was forged. Now, the contention of the plaintiff is that that is just as though Mr. Mercur had said that the plaintiff forged the name of Frank G. Perrin. The circumstance is continued. The name of the man who paid the bill relating to this transaction in Philadelphia he said was Shuster. Then he goes on to tell some other circumstance and winds up by saying "but the man who signed S. D. Shuster was Tom Garvin, he is the man who signed the name of S. D. Shuster. There is no S. D. Shuster in Delaware County." Well, he might not be in Delaware County, but he could be somewhere else. Now the contention of the plaintiff is that that whole article does say, does declare, and does say that this defendant charged the plaintiff with committing an offense that ought to consign him to the State prison, and that offense was the forgery of Perrin's name and the forgery of Shuster's name, one or both. That is all there is in this case. Take this paper with you. Read it. And if from it you are satisfied that it does charge the defendant—that it did charge the plaintiff with the forgery of Perrin's name or Shuster's name or both, did charge that offense that would land him in State prison, then the plaintiff is entitled to your verdict. If you find that this article is defamatory, that it charges him with an indictable offense, the punishment of which would be infamous, if you find that, then that imports that it is maliciously or negligently made, and requires no proof either of malice or negligence. It will be for you to say, the burden is on the plaintiff to convince you, if he fails the defendant is entitled to your verdict. If you find for the plaintiff you will say how much damages the plaintiff is entitled to to compensate him for this wrong against his good name and character. That is a question for you. What will compensate him. There is no punitive dam-

ages asked, as we understand, at all.  That is there is no
damages asked by way of punishing the defendant for
any reckless disregard of the use of language.  But dam-
ages that will compensate the plaintiff for the circula-
tion of this slander against his good name.  That is for
you.

Verdict and judgment for plaintiff for $1,200.  De-
fendant appealed.

*Error assigned,* among others, was the charge of the
court.

*William I. Schaffer,* with him *A. B. Geary* and *J. Bor-
ton Weeks,* for appellant.—There was no proof in sup-
port of the allegation that defendant charged the plain-
tiff with having forged the name of Frank G. Perrin.

Even assuming the expression "a man went to Phila-
delphia, etc.," referred to above, was intended by the de-
fendant to mean Mr. Garvin, it is submitted that the
words as used did not charge the crime of forgery : Miller
v. Rittinger, 2 Pearson 351; Kennelly v. Bricker, 48
Pitts. L. J. 286.

There is no evidence in the case supporting the alle-
gation that defendant charged the plaintiff with having
forged the name of S. D. Shuster.

There is no merit in plaintiff's contention that the fol-
lowing words alleged to have been spoken by Mr. Mercur
in themselves constituted a slander : "The leaders of the
Republican machine in this county are dishonest and if
most of them had their just deserts they would be in
State prison to-day.  I will name some of them as I go
along.  Tom Garvin, chairman of the Republican County
Committee" : Harvey v. Boies, 1 P. & W. 12; Horn-
burger v. Seiler, 24 Pa. C. C. R. 476; Colbert v. Cald-
well, 3 Grant 181.

Since the words alleged to have been used did not
charge the crime of forgery they are not actionable per
se, and no special damages having been laid or proved

there can be no recovery: Davis v. Carey, 141 Pa. 314; Leitz v. Hohman, 16 Pa. Superior Ct. 276.

No special damages were alleged or proven and for this reason the verdict as rendered cannot stand: Allison v. Bradstreet, 17 Philadelphia 348; Leitz v. Hohman, 18 Pa. Superior Ct. 276.

*Albert J. Williams,* for appellee.—The test is not whether the appellant meant to charge Mr. Garvin with forging Mr. Perrin's name. The question is whether the charge may naturally or probably be taken to refer to the appellee. If so it is actionable by him, though he is not named or even is called by a different name: Clark v. North American Co., 203 Pa. 346; Goebler v. Mitchell, 2 Dallas 57; Hays v. Brierly, 4 Watts 392; Leitz v. Hohman, 16 Pa. Superior Ct. 276; Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432.

Opinion by Porter, J., October 8, 1917:

This is an action of trespass for slander. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals. The alleged slanderous statement was made by the defendant in a speech which he delivered at a public political meeting. The statement of which the plaintiff complains was of considerable length and, as it will appear in the report of the case, it is not necessary that we should in this opinion incorporate the words used save only to the extent necessary to the discussion of the questions involved. The statement of the questions involved contained in the paper book of the appellant sets forth seven questions, but the first, second, third and sixth are but different forms of presenting the vital question in this case, viz: Did the court err in permitting the jury to find that the words spoken by the defendant constituted a charge that the plaintiff had been guilty of the crime of forgery? The remaining questions, as stated by appellant, are "Did the court err in refusing to permit the defendant to tes-

tify as to the language used and the intent with which
he referred to the plaintiff?"   "Did the court err in its
charge in treating the words spoken as though they had
been written and the writing thereof admitted?"   And
"Was the charge of the court inadequate, and in particu-
lar on the question of damages?"

The first question above stated is the important one
and, in order to properly discuss it, it is necessary that
we here quote part of the speech made by the defendant.
"The leaders of the Republican machine in this county
are dishonest, and if most of them had their just deserts
they would be in State prison to-day.   I will name some
of them as I go along.   Tom Garvin, chairman of the
Republican County Committee.   Now, gentlemen, I will
tell you something that may be news to you with refer-
ence to Mr. Garvin.   Last fall during our campaign a
man went into Philadelphia to a......company in Phila-
delphia and signed a contract agreeing to pay one hun-
dred dollars for posting certain fake Bull Moose and
Progressive posters in certain precincts in this county.
The man who went and signed that name forged the
name of Frank G. Perrin.   I don't hesitate to say that
Frank G. Perrin might have done this same thing, but he
did not.   His name was forged."   The remaining por-
tion of the speech throws no light upon whether the "man
who went to Philadelphia" was the plaintiff, nor does it
in any way qualify what is above quoted with regard to
the forgery of the name of Perrin.   The plaintiff had in-
corporated in his statement, by way of innuendo, that
the language above quoted charged him, the plaintiff,
with having forged the name of Frank G. Perrin.   The
appellant contends that the words above quoted cannot
be held capable of the meaning attributed to them by the
innuendo.   This contention is sought to be sustained
upon two grounds: First, that the "speech discloses that
he (the appellant) expressly avoids mentioning the
plaintiff's name in connection with the statement as to

the forging of Frank G. Perrin's name"; and, Second, even if the meaning of the words was that the plaintiff was the man who went to Philadelphia and signed the name of Perrin, yet the words as used did not charge the crime of forgery. With regard to the first branch of this contention, it is true that the defendant does seem to have expressly avoided saying in so many words that Thomas H. Garvin had forged the name of Frank G. Perrin to a contract agreeing to pay one hundred dollars for posting bills. The defendant had, however, immediately prior to making this statement assured his hearers that he was going to tell them "something that may be news to you with reference to Mr. Garvin," and in the very next sentence he makes the statement with which we are now dealing. There was nothing in that sentence nor in anything else that the defendant said which tended to indicate that the man who signed the name of Perrin was any person other than Garvin, the man about whom he was then talking. The question is not whether the name of the plaintiff was used in the particular sentence in which the charge was made, but did the circumstances and the connection in which it was made indicate to those who heard it that the plaintiff was the guilty party: Hays v. Brierly, 4 Watts 392; Clark v. North American Co., 203 Pa. 346. The sense in which words are received by the world is the sense which courts of justice ought to ascribe to them in slander: Rue v. Mitchell, 2 Dallas 57. Equally without foundation is the contention that the words did not mean that the man who signed the name of Perrin had been guilty of the crime of forgery. Those who heard the words certainly must have understood them as meaning that the man who signed that contract to pay one hundred dollars, in signing, forged the name of Frank G. Perrin. That contract if genuine would operate as the foundation of a liability upon the part of Perrin, and the forgery of his name was clearly to the prejudice of his

right.   The contract was such an instrument as to make
the fraudulent signing of it an indictable offense, both
at common law and under our statutes: Commonwealth
v. Luberg, 94 Pa. 85.   It is true that words spoken which
import to charge one with immoral or disgraceful con-
duct are not actionable per se.   The general rule, subject
to exceptions which it is not necessary here to state, is
as follows: "In case the charge, if true, will subject the
party charged to an indictment for a crime, involving
moral turpitude, or subject him to an infamous punish-
ment, then the words will be in themselves actionable":
Davis v. Carey, 141 Pa. 314.   In an action for slander
where the alleged slanderous words charge an indictable
offense, it is for the court to decide whether the words
—set forth—in the plaintiff's statement are capable of
the meaning ascribed to them by the innuendo, and for
the jury to decide whether such meaning is properly
ascribed to them: Leitz v. Hohman, 16 Pa. Superior Ct.
276; Price v. Conway, 134 Pa. 340.   It is not necessary,
however, that the words spoken charging a crime should
contain all the averments necessary to sustain an indict-
ment for that crime; in order to make the words actiona-
ble per se.   If A says that B murdered C, who was re-
cently found dead, the words are actionable per se, al-
though A did not say that B did the act feloniously.
Forgery is a crime involving moral turpitude and sub-
jecting the party guilty thereof to an infamous punish-
ment.   The court below did not err in holding that the
words spoken were capable of the meaning ascribed to
them by the innuendo, and properly submitted to the jury
to decide whether such meaning was properly ascribed
to them.   If that was the meaning of the words, as the
jury found, then the words were actionable per se.

The next question which appellant states to be in-
volved: "Did the court err in refusing to permit the de-
fendant to testify as to the language used and the intent
with which he referred to the plaintiff?" is too broadly

stated.  The court did not refuse to permit the defendant to testify to anything and everything that he said. The defendant did not deny that he had used the language which has been above quoted.  He was permitted to testify as to all the circumstances under which the words were uttered.  He was distinctly permitted to testify that he bore no malice or ill will towards the plaintiff.  The only thing which the defendant was not permitted to testify to was as to the meaning of the words which he did not deny that he had uttered.  The speaker or writer of words is accountable for the import of the words as they will naturally be understood by the hearer or reader.  The test of his liability in a civil action is not what was his secret intent, but what is the meaning of his words: Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432; Hays v. Brierly, 4 Watts 395; Vanvechten v. Hopkins, 5 Johns 225.  The meaning of the words was for the jury, to be ascertained in light of all the circumstances and all that was said upon the subject.  The defendant was not deprived of the right to present all of the circumstances and relate all that was said.  The evidence as to his secret meaning, when he used the words was properly excluded.

The court did not in its charge treat the words spoken as if they had been written.  The court distinctly instructed the jury that unless they found that the defendant had, in the language used, charged the plaintiff with the crime of forgery then their verdict must be in favor of the defendant.  The grounds upon which a recovery was permitted were those exclusively applicable in actions for words spoken.  There was nothing in the charge from which the jury could have been led to believe that it would be proper for them to render a verdict in favor of the plaintiff without first finding that the words uttered by the defendant had charged the plaintiff with having been guilty of an indictable offense involving moral turpitude and subjecting him to an infamous pun-

ishment.    The charge was not inadequate as to the measure of damages.    The jury were told that, in case they found for the plaintiff, they should find damages in such amount as would compensate the plaintiff for the wrong against his good name.    They were distinctly told that they were not to award punitive damages, by way of punishing the defendant.    The charge was certainly free from error as far as it went, and if the defendant desired more elaborate instruction upon that point he should have submitted a request for the same.

The judgment is affirmed.